[No. B051786. Second Dist., Div. Five. Dec. 19, 1991.]

KATHLEEN M. PIERCE, as Trustee, etc., et al., Plaintiffs and Appellants, v.
HERBERT LYMAN et al., Defendants and Respondents.

## COUNSEL

Engstrom, Lipscomb & Lack, Steven C. Shuman, Mary Kim Wood and Jeffrey T. Bolson for Plaintiffs and Appellants.

Revere, Rykoff & Wallace, Stephen R. Rykoff, Caroline Fowler, Hartley & Hartley and Joseph M. Hartley for Defendants and Respondents.

## OPINION

**GRIGNON, J.**—This is an appeal from a judgment (orders of dismissal) following two orders sustaining, without leave to amend, two separate demurrers to appellants' second amended complaint. That complaint sought over $2 million in damages in connection with the dissipation of assets of a testamentary trust through improper and imprudent investments by the former trustees of the trust, together with their attorneys, investment advisers, investment managers, stockbrokers, and others. The question presented in this appeal is whether respondent attorneys owed a duty to the beneficiaries of the trust and, thus, whether it was error to sustain the demurrers for failure to state a cause of action against them. We reverse.

### FACTS

The second amended complaint, filed on June 6, 1990, reveals the following facts which, for purposes of this appeal, we assume to be true. (*Bloomberg* v. *Interinsurance Exchange* (1984) 162 Cal.App.3d 571, 574 [207 Cal.Rptr. 853].) Plaintiff and appellant Kathleen M. Pierce is the trustee of the MacNeel Pierce Testamentary Trust (the Trust). She is also an income beneficiary of the Trust. Plaintiff and appellant John Schlanger is the guardian ad litem of the minor and unborn remainder beneficiaries of the Trust.

Defendants Catherine Hastings McCubbin and Jacqueline Weir were the former trustees of the Trust (McCubbin and Weir, or former trustees). Weir was also an income beneficiary of the Trust.

Defendant Prudential Bache Securities acted as stockbroker and investment adviser to McCubbin and Weir. Defendants Smith Barney Harris & Upham, Shearson Lehman Hutton, and Merrill Lynch, Pierce, Fenner & Smith, Inc., acted as stockbrokers and investment managers to McCubbin and Weir. Defendant Simon Schwartz and his shell corporation, Schwartz Advisory Corporation, were the financial advisers to the former trustees. Defendants and respondents Attorney Herbert Lyman and his law partnership, Lyman & Minster, represented both of the former trustees of the Trust. Defendant and respondent attorney William Cuthbert represented McCubbin only.

The Trust is administered in the Probate Department of the Los Angeles Superior Court. The Trust was designed to provide income to income beneficiaries and, upon the occurrence of certain conditions, to distribute the remaining corpus to a separate class of remainder beneficiaries. The trustees were empowered to make investments according to the intent of the Trust and for the benefit of all beneficiaries. McCubbin and Weir owed a fiduciary duty to each beneficiary of the Trust. That included the duty of full disclosure and the duty to refrain from self-dealing. McCubbin and Weir also owed a duty to exercise that degree of care and skill exercised by reasonably prudent investors and trustees.

Beginning in 1979, the former trustees breached their fiduciary duty to the Trust and its beneficiaries. Defendant Schwartz had recommended to the former trustees a program of investment to be utilized by the Trust. That program of investment included the purchase of volatile and risky stock, short sales, the trading of "puts" and "calls" (both "covered" and "naked"), and investments in limited partnerships with little or no opportunity for return on investment. These investments were inappropriate for the Trust and were not transactions which would have been undertaken by a reasonably prudent investor or trustee.

The former trustees knew that they lacked the sophistication and knowledge to properly monitor, recommend, or engage in such trading. By engaging in investment activity beyond their knowledge and degree of sophistication and by failing to disclose the nature of this investment program to the probate court and to the beneficiaries of the Trust, the former trustees breached their fiduciary duty. In addition, the trades were accomplished using the riskiest possible methods, such as allowing exorbitant margin debt

to be incurred by unnecessary trading on margin and incurring excessive commissions. Weir encouraged trading to generate "income" at the expense of the Trust corpus for her own benefit as an income beneficiary. McCubbin knew that Weir was engaging in this self-dealing, but failed to take any action against her, despite heavy trading losses. The breach of fiduciary duty by McCubbin and Weir depleted the corpus of the Trust by at least $2 million.

Lyman knew or should have known that the trading scheme devised by Schwartz was inappropriate for the Trust, particularly inasmuch as such scheme did not have probate court approval. In addition, Lyman knew that Schwartz was not qualified to run an investment program of that type, knew that Schwartz was doing a poor job of managing the investments, and knew that the Trust was incurring unnecessary and inappropriate margin interest. Lyman also knew of the risky nature of the trading, the incurring of unnecessary margin interest, the artificial inflation of commissions, the generation of "income" at the expense of Trust corpus, and the failure of the former trustees to perform their duties in a manner prescribed by law. All of the foregoing facts known to Lyman should have been disclosed by him to the probate court.

Moreover, Lyman purposefully drafted and filed annual accountings with the probate court in such a manner as to conceal from the court that the Trust was engaging in imprudent investment schemes. Lyman also utilized his authority over the Trust assets and knowledge of Trust affairs to "gain access to investments on a preferential basis," and thereby placed his own interests before those of the Trust. He also concealed this from the probate court. Lyman conspired with Schwartz, Schwartz Advisory Corporation, and certain Doe defendants to transact trades in a manner which would maximize commissions and margin interest in a way that would be undetected by unsophisticated investors. Schwartz and Lyman conspired to conceal their breaches of fiduciary duty by writing self-serving letters which described the "riskiness" of the investment scheme which had been "forced upon them."[1] Lyman also failed to advise the former trustees to seek probate court approval for their investments and allowed them to serve without bond.

Cuthbert knew that McCubbin was unsuited to perform the duties of a trustee. Cuthbert also knew that Weir was engaged in self-dealing, that Lyman was concealing the nature of the Trust activities from the probate court, and aided and abetted that concealment by participating in the preparation of false and misleading accountings for the court. Cuthbert also instructed McCubbin not to disclose to the probate court or to the beneficiaries of the Trust the aforementioned self-dealing and misdealing with Trust assets.

---

[1] The complaint does not make clear to whom these letters were addressed.

Lyman and Cuthbert engaged in numerous misrepresentations to the probate court and also concealed from the court the true nature of the Trust investment activities. In these fraudulent statements and concealments, they conspired with third parties, who were not their clients, in order to advance their own personal gain. That personal gain was in the form of fees and investment opportunities, and to avoid liability for "earlier activity."[2]

The second amended complaint sets forth four causes of action: (1) against the former trustees, for breach of fiduciary duty; (2) against all defendants for breach of fiduciary duty and constructive fraud; (3) against the broker defendants for negligence and breach of fiduciary duty; and (4) against Lyman, Cuthbert, Schwartz, and the broker defendants for conspiracy to commit fraud. Appellants seek over $2 million in compensatory damages and punitive damages according to proof.

PROCEDURAL BACKGROUND

*Cuthbert's Demurrer to the Second Amended Complaint*

Cuthbert demurred to the second (breach of fiduciary duty) and fourth (conspiracy to commit fraud) causes of action in the second amended complaint on the ground, inter alia, that they failed to state a cause of action against him. The gist of the demurrer was that Cuthbert owed no fiduciary duty to the beneficiaries of the Trust, with whom Cuthbert was not in privity. With respect to the conspiracy cause of action, Cuthbert contended that no unlawful act by him was alleged in the complaint. At a hearing on July 5, 1990, the demurrer was sustained without leave to amend.[3] Appellants filed a notice of appeal from this order on July 13, 1990. The complaint against Cuthbert was subsequently dismissed, pursuant to stipulation, on December 5, 1990.

*Lyman's and Lyman & Minster's Demurrers to the Second Amended Complaint*

Lyman and Lyman & Minster also demurred to the second amended complaint on essentially the same grounds as Cuthbert. Lyman and his firm argued that they owed no duty to the beneficiaries of the Trust and, therefore, the second cause of action was not cognizable. They also contended that the fourth cause of action for conspiracy was a sham and, alternatively, failed to specify with sufficient particularity the fraud alleged. At a hearing

---

[2] The complaint does not specify the nature of this earlier activity.
[3] Additional grounds, including failure to comply with the statute of limitations and section 1714.10 of the Civil Code, were taken off calendar.

on July 16, 1990, the demurrer was sustained without leave to amend. Pursuant to stipulation, the complaint was dismissed as to Lyman and Lyman & Minster on September 21, 1990. The notice of appeal from this dismissal was filed on November 14, 1990.

DISCUSSION

*Standard of Review*

■ The rules which guide our review of an order sustaining a general demurrer were summarized in *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]:

" 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citation.] The burden of proving such reasonable possibility is squarely on the plaintiff."

Our task is to determine, in light of the foregoing rules, whether appellants' second amended complaint states any cause of action against respondent counsel for the former trustees.

*Second Cause of Action for Breach of Fiduciary Duty*

■ In order to plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any one of these elements is fatal to the cause of action. Respondents herein contend that the allegations of the second amended complaint do not establish the existence of a fiduciary duty between them and the beneficiaries of the Trust.

■ A fiduciary or confidential relationship can arise when confidence is reposed by persons in the integrity of others, and if the latter voluntarily accepts or assumes to accept the confidence, he or she may not act so as to take advantage of the other's interest without that person's knowledge or

consent. (*Tri-Growth Centre City, Ltd.* v. *Silldorf, Burdman, Duignan & Eisenberg* (1989) 216 Cal.App.3d 1139 [265 Cal.Rptr. 330].) "The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity . . . ." (*Cox* v. *Delmas* (1893) 99 Cal. 104, 123 [33 P. 836], cited in *Barbara A.* v. *John G.* (1983) 145 Cal.App.3d 369, 383 [193 Cal.Rptr. 422].) "The basic fiduciary obligations are twofold: undivided loyalty and confidentiality. Although the phrasing . . . is varied and often dependent upon the context of particular circumstances, this rule exists in every jurisdiction in the United States." (1 Mallen & Smith, Legal Malpractice (3d ed.) § 11.2, p. 631.)

■ The first issue presented in this appeal is whether respondents owed a fiduciary duty to the beneficiaries of the Trust in addition to the duty owed to their clients, the former trustees of the Trust. Respondents contend that as attorneys for the former trustees, they did not owe any fiduciary duty to the Trust beneficiaries with whom they were not in privity of contract.

■ The predicate of an attorney's fiduciary obligations is the existence of an attorney-client relationship. (1 Mallen & Smith, Legal Malpractice, *supra*, § 11.2, pp. 635-636.) "The developing concept of expanded privity, resulting in an attorney's liability for negligence to one other than his client, has not included an attorney's fiduciary obligations. Although the concept of expanded privity may result in a duty of care in favor of a third person, there is no implied attorney-client relationship or imposed fiduciary obligations." (1 Mallen & Smith, Legal Malpractice, *supra*, § 11.2, pp. 638-639; see discussion in this opinion, *infra*.)

■ In the case at bar, the second amended complaint alleges that respondents served as attorneys for the former trustees, and no attorney-client relationship existed between respondents and the Trust beneficiaries. Since no attorney-client relationship existed between respondents and the Trust beneficiaries, no fiduciary obligations existed between them.

The issue is, then, whether a cause of action may be stated against respondent attorneys for assisting their clients, the former trustees, in breaches of the former trustees' fiduciary duties. ■ The violation by the former trustees of any duty that they owed appellants as beneficiaries of the Trust is a breach of trust. (Rest.2d Trusts, § 201.) Those duties include the duty of loyalty (Prob. Code, § 16002); the duty to deal impartially with the beneficiaries (Prob. Code, § 16003); the duty to avoid conflicts of interest (Prob. Code, § 16004); the duty to control and preserve trust property (Prob. Code, § 16006; Rest.2d Trusts, §§ 175, 176); the duty to make trust property productive (Rest.2d Trusts, § 181); the duty to dispose of improper investments (Rest.2d Trusts, §§ 230, 231); and the duty to report and account

(Prob. Code, § 16060).[4] The standard of care with respect to trust investments is the modern "prudent investor" rule. (11 Witkin, Summary of Cal. Law (9th ed. 1990) Trusts, § 79, p. 958 and cases cited therein.)

The beneficiaries of a trust may sue a trustee to recover profits or recoup losses resulting from a trustee's breach of any of the foregoing duties. (*Work v. County Nat. Bank etc. Co.* (1935) 4 Cal.2d 532, 536 [51 P.2d 90].) At common law, the beneficiaries of a trust could also sue third persons who participated with a trustee in alleged breaches of trust. (See Rest.2d Trusts, § 291 et seq.; 4 Scott, The Law of Trusts (4th ed.) § 326.4.) "A third person who, although not a transferee of trust property, has notice that the trustee is committing a breach of trust and participates therein is liable to the beneficiary for any loss caused by the breach of trust." (Rest.2d Trusts, § 326, p. 124;[5] *Andrews* v. *Tuttle-Smith Co.* (1906) 78 N.E. 99, 101; *In re Bond & Mortgage Guarantee Co.* (1952) 303 N.Y. 423 [103 N.E.2d 721, 726].)

At common law, in order to state a cause of action against an attorney for active participation in a breach of trust by a trustee, the beneficiaries were required to allege that the attorney knew or should have known that he or she was assisting the trustee to commit a breach of trust, and that the attorney assisted the trustee in such a way that the attorney, as well as the trustee, should be liable for the breach of trust. (4 Scott, The Law of Trusts (4th ed.) § 326.4, p. 310; Bogert, Trusts & Trustees (2d ed. 1982) § 901, p. 256.) The rendering of legal advice to the trustee was insufficient; the attorney must have actively colluded with the trustee in breaching the trustee's fiduciary duties.[6] (4 Scott, The Law of Trusts (4th ed.) § 326.4, pp. 312-313; see also *Andrews, supra,* 78 N.E. 99, 101.)

---

[4]That section provides that "[t]he trustee has a duty to keep the beneficiaries of the trust reasonably informed of the trust and its administration."

[5]Comment a to that section reads: "*Knowledge of breach of trust.* If a third person participates with the trustee in committing a breach of trust, knowing that he is committing a breach of trust, he is liable to the beneficiary for participation in the breach of trust." (Italics in original.)

[6]"Mere knowledge by a third person that a breach of trust is in process, coupled with the failure to notify the beneficiary or to interfere with the action of the trustee, does not amount to a participation in a breach. Such conduct is inaction which may be reprehensible under the highest standards of ethics, but no legal duty has been violated. On the other hand, if the third party by any act whatsoever assists the trustee in wrongfully transferring the benefits of the trust property to the trustee, another person, or the alleged participant, or aids in destroying or injuring that property, there has been conduct upon which liability can be predicated, if the requisite state of mind existed in the defendant. . . . [¶] Thus liability as a participant has been decreed by reason of the following acts: aiding the trustee to deceive the beneficiaries of an investment trust as to the financial stability of the trust, . . . inducing the trustee to make a non-legal investment, [and] . . . assisting the trustee to speculate with the trust funds or to use them for other illegal purposes." (Bogert, Trusts & Trustees, *supra,* § 901, pp. 260-264.)

In California, few cases have addressed the issue whether and under what circumstances a third party may be liable for colluding or conspiring with a fiduciary to breach the fiduciary's duty. In *Gray v. Sutherland* (1954) 124 Cal.App.2d 280, 290 [268 P.2d 754], it was observed that a defendant who was not a corporate director should "be liable for breach of fiduciary duty by colluding with a disloyal fiduciary without being a fiduciary himself." In *Bancroft-Whitney Co. v. Glen* (1966) 64 Cal.2d 327, 353 [49 Cal.Rptr. 825, 411 P.2d 921, 24 A.L.R.3d 795], an unfair competition case, a party who "was aware of or ratified [another's] breach of his fiduciary duties, . . . cooperated with [him] in the breach, and . . . received the benefits of [his] infidelity" was held liable for participation in the breach of fiduciary duty. In the trust context, it was held in *Morales v. Field, DeGoff, Huppert & MacGowan* (1979) 99 Cal.App.3d 307, 314-315 [160 Cal.Rptr. 239], that "[i]t is clear that the attorney for a trustee may be liable to the beneficiary of the trust when he actively participates in a breach of trust." See also *Certified Grocers of California, Ltd. v. San Gabriel Valley Bank* (1983) 150 Cal.App.3d 281 [197 Cal.Rptr. 710] (where a common plan to commit a tort exists, all who participate are liable and may be liable for breach of another's fiduciary duty); and *St. James Armenian Church of Los Angeles v. Kurkjian* (1975) 47 Cal.App.3d 547, 552 [121 Cal.Rptr. 214] (a person not a fiduciary may be liable for breach of fiduciary duty if he colludes with a disloyal fiduciary).

The right to sue attorneys, agents, or employees of a fiduciary for participation in the fiduciary's breach of trust has been circumscribed by the California Supreme Court in *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39 [260 Cal.Rptr. 183, 775 P.2d 508]. In that case, an insurance company's adjusters and attorneys were held not liable for conspiracy to breach Insurance Code section 790.03, subdivision (h)(5), the statutory duty to effectuate in good faith the prompt, fair, and equitable settlement of claims in which liability has become reasonably clear. Because by statute that duty was not imposed on *noninsurers*, no cause of action could be stated against a noninsurer for conspiracy with an insurer defendant to violate that duty.

*Doctors' Co., supra,* cited several exceptions to this rule. Most notably, where an attorney conspires with a client to violate a statutory duty peculiar to the client, the attorney may be liable for his or her participation in the violation of the duty if the attorney was acting in furtherance of his or her own financial gain. (*Doctors' Co., supra,* 49 Cal.3d at p. 46.)[7] Also to be distinguished is the case where an attorney violates his or her own duty to

---

[7]The "financial advantage" requirement of *Doctors' Co.* is consistent with many of the earlier cases finding liability for participation in a breach of trust, where the nonfiduciary "reaped the benefit" of that disloyalty. (*Bancroft-Whitney Co., supra,* 64 Cal.2d at p. 353; *Heckmann v. Ahmanson* (1985) 168 Cal.App.3d 119, 127 [214 Cal.Rptr. 177].)

the plaintiff. (*Id.* at p. 47.) An attorney may also be liable to a plaintiff where the attorney commits actual fraud by making express misrepresentations to the plaintiff. (*Id.* at p. 48.)

Following the rationale of *Doctors' Co.*, Division Four of this district in *Skarbrevik* v. *Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692 [282 Cal.Rptr. 627], recently held that an attorney who assisted majority shareholder clients in diluting the shares of a minority shareholder, thereby breaching the shareholders' fiduciary duty to the minority shareholder, was not liable for conspiracy to defraud since the attorney did not act to further his own financial advantage. Liability for constructive fraud could not be had, where the duty to disclose was peculiar to the client. The court noted, however, that if the attorney had engaged in actual misrepresentations to the minority shareholder, that would constitute a breach of his own duty to abstain from harming another for which the attorney could be liable. No actual fraud was alleged in *Skarbrevik, supra.*

Here, the allegations of the second amended complaint plainly state a cause of action for participation in a breach of trust. The complaint alleges that the former trustees, on the advice of defendant Schwartz and his company, undertook a program of investment which was imprudent and unsuitable for the Trust. That program included speculative investments and investments with little or no opportunity for return on investments. The trading was frequently done on margin, even when unnecessary, and also incurred excessive commissions. In addition, former trustee Weir encouraged trading which would generate "income" at the expense of the Trust corpus. Former trustee McCubbin knew of Weir's self-dealing, but failed to take any action to stop her, despite heavy losses. These breaches of fiduciary duty by the former trustees depleted the Trust corpus by at least $2 million.

The complaint alleges that Lyman knew or should have known of these breaches of fiduciary duty by the former trustees. This, alone, would be insufficient to state a cause of action against him for participating in those breaches. However, it is also alleged that Lyman purposefully drafted and filed annual accountings with the probate court in order to conceal those breaches from the court. Lyman also used his authority over Trust assets and knowledge of Trust affairs to "gain access to investments on a preferential basis" and placed his own interest over the Trust interests. He concealed this self-dealing from the probate court.

Cuthbert is alleged to have known of Weir's self-dealing and Lyman's concealments from the probate court, and to have aided and abetted that concealment by participating in the preparation of accountings for the court.

In addition, Cuthbert instructed McCubbin not to disclose to the probate court or to the beneficiaries this self-dealing or misdealing of Trust assets. Lyman and Cuthbert are both alleged to have engaged in numerous misrepresentations to the probate court and to have conspired with third parties who were not their clients. They are also alleged to have acted to advance their own personal gain in the form of fees and investment opportunities and in order to avoid liability for earlier activity. Thus, the *Doctors' Co.* "personal financial advantage requirement" has been adequately pled.

These allegations demonstrate that respondents are accused of active participation in breaches of fiduciary duty by the former trustees. More than the simple rendering of legal advice to respondents' clients is alleged. More than mere knowledge of the breach of fiduciary duty is alleged. Active concealment, misrepresentations to the court, and self-dealing for personal financial gain are described. We find that this is sufficient to state a cause of action for breach of fiduciary duty under the authorities cited above. We conclude that the second cause of action properly states a cause of action against respondents.[8]

*Fourth Cause of Action for Conspiracy to Commit Fraud*

Appellants also contend that it was error to sustain, without leave to amend, respondents' demurrers to their fourth cause of action for conspiracy to commit fraud. Cuthbert demurred to the fourth cause of action on the ground that the complaint failed to identify an unlawful act by him. In a similar vein, Lyman and Lyman & Minster demurred on the basis that the cause of action failed to plead fraud with sufficient specificity. Lyman and Lyman & Minster also contended that the pleading was a sham, since it had been amended to delete allegations that respondents had conspired with their clients (the former trustees).[9] Respondents had earlier successfully demurred to that cause of action on the basis that it failed to comply with section 1714.10 of the Civil Code.

---

[8]Respondents contend that this case is controlled by *Goldberg* v. *Frye* (1990) 217 Cal.App.3d 1258 [266 Cal.Rptr. 483]. *Goldberg* concerned a suit by legatees to a will against the administrator of the estate and his attorney. Summary judgment for the attorney was upheld because no cause of action for negligence could be stated by the legatees against the attorney for the administrator absent privity of contract. *Goldberg* is inapposite. The complaint in *Goldberg* alleged only one cause of action for negligence against the estate's attorney. It did not concern active, knowing participation in breaches of fiduciary duty by the administrator. In this case, appellants have not attempted to state a cause of action for negligence against respondents.

[9]It is unclear from the record which of these grounds provided the basis for the court's sustaining of Lyman's general demurrer to the fourth cause of action. It appears, however, that the court did not base its ruling on failure to plead compliance with Civil Code section 1714.10.

■ The arguments that the fourth cause of action fails to plead fraud with specificity or fails to identify an unlawful act by Cuthbert are without merit. As indicated above, the second amended complaint includes numerous allegations concerning respondents' active participation in various breaches of fiduciary duty including, but not limited to, active concealment of the nature and status of trust investments, self-dealing, and misrepresentations to the beneficiaries and the probate court. These allegations are sufficiently specific to put respondents on notice of the charges against them.[10]

■ Respondents' argument that the fourth cause of action fails to plead compliance with Civil Code section 1714.10 is, however, persuasive. Civil Code section 1714.10 provides in pertinent part: "No cause of action against an attorney based upon a civil conspiracy with his or her client shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes a claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action. The court may allow the filing of a pleading claiming liability based upon a civil conspiracy following the filing of a verified petition therefor accompanied by the proposed pleading and supporting affidavits stating the facts upon which the liability is based."[11]

Civil Code section 1714.10 was enacted in 1988. In enacting the statute, the Legislature stated: "It is the intent of the Legislature in enacting this measure to modify the decision of the Court of Appeal in *Wolfrich Corp.* v. *United Services Automobile Assn.*, 149 Cal.App.3d 1206 [197 Cal.Rptr. 446] (1st Dist. 1983)." (Stats. 1988, ch. 1052, § 2.)

In *Wolfrich*, an insured sued an insurance company, and the attorneys representing the insurance company, for conspiracy to violate section 790.03

---

[10]The parties have not raised either in the trial court or on appeal the issue as to whether the cause of action against the attorneys for conspiracy to defraud is barred by the litigation privilege set forth in Civil Code section 47, subdivision 2. Thus, we do not address it.

[11]Effective January 1, 1992, Civil Code section 1714.10 has been amended to read: "(a) No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action. . . . [¶] (c) [This] Section shall not apply to a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain."

of the Insurance Code (bad faith insurance practices). The First Appellate District held that the attorneys were not in the "business of insurance" and, thus, could not be sued for a violation of the Insurance Code. Nevertheless, the First Appellate District concluded that the attorneys could be sued for conspiring with their insurance company client to violate the Insurance Code. *Wolfrich* was disapproved by the Supreme Court in *Doctors' Co.*, *supra*, 49 Cal.3d at pages 48-49.

Only two appellate decisions have cited Civil Code section 1714.10. In *Doctors' Co.*, the Supreme Court merely noted that the section set forth procedural prerequisites for suit on claims of civil conspiracy of attorneys with their clients. In *Villa Pacific Building Co.* v. *Superior Court* (1991) 233 Cal.App.3d 8, 12 [284 Cal.Rptr. 227], Division One of this appellate district held that "when a plaintiff fails to obtain court approval before filing suit against an attorney on a conspiracy theory involving a client, the benefit conferred by section 1714.10 is waived unless the [defendant] attorney objects at the first available opportunity . . . ."[12] Neither of these decisions is helpful to the issues presented in this case.

In the original complaint[13] filed by appellants on November 2, 1989, they alleged in the fourth cause of action for fraud against all defendants, that all defendants conspired to defraud the beneficiaries of the Trust. The essence of the conspiracy was alleged to be misrepresentation to the probate court and the beneficiaries of the nature of Trust investments and the cause of the dissipation of Trust assets. In the first amended complaint filed by appellants on April 26, 1990, after a successful demurrer by respondents, the fourth cause of action for fraud was again alleged against all defendants. The cause of action was amended to specifically allege particular acts of fraud: (1) misrepresentations to the probate court that the investment program was manageable, and that they were capable of managing the program; (2) misrepresentations to the Trust that the losses were the result of the investment program, and that the program was necessary to generate income; (3) concealment of the nature of certain limited partnership investments and the identities of those who stood to gain personally from the partnerships; (4) concealment of the payment of excess commissions and margin interest; and (5) concealment of the reasons for margin calls.

After another successful demurrer by respondents, appellants filed a second amended complaint on June 6, 1990. In the second amended complaint, the fourth cause of action was amended to allege a conspiracy to commit

---

[12]The holding of *Villa Pacific Building Co.* has been codified in subdivision (b) of the newly amended Civil Code section 1714.10.

[13]The complaint and the amended complaints were unverified.

fraud against Lyman, Schwartz, Cuthbert and the brokers. The former trustees were omitted from the alleged conspiracy. The second amended complaint also added allegations that each of the named defendants agreed to participate and did participate in the conspiracy and did so for their own personal gain. The second amended complaint was also amended to allege that the fraud was so pervasive that any consent of the former trustees was void.

If we focused exclusively upon the allegations of the second amended complaint, it would be clear that the procedural requirements of Civil Code section 1714.10 would not be applicable to the civil conspiracy alleged between Lyman, Cuthbert, Schwartz and the brokers. "It would be improper so to limit our perspective, however. [¶] [Appellants] may not so easily avoid the effect of the allegations of their earlier complaint. ▮ 'Where a verified complaint contains allegations destructive of a cause of action, the defect cannot be cured in subsequently filed pleadings by simply omitting such allegations without explanation.' [Citations.] . . . [T]he rule also applies to unverified complaints." (*Zappas* v. *King Williams Press, Inc.* (1970) 10 Cal.App.3d 768, 773-775 [89 Cal.Rptr. 307].)

▮ Here, appellants originally, and in their first amended complaint, alleged a civil conspiracy between the former trustees and the attorneys, financial adviser and brokers of the former trustees, to defraud the beneficiaries of the Trust by means of misrepresentations to the probate court and the beneficiaries. When respondents demurred to the complaint on the ground that it alleged a cause of action against attorneys based on a civil conspiracy with their clients which did not comply with Civil Code section 1714.10, appellants then deleted the clients, the former trustees, from the conspiracy allegations. The stated purpose of the amendment was to circumvent the application of Civil Code section 1714.10. ▮ "A pleader may not attempt to breathe life into a complaint by omitting relevant facts which made his previous complaint defective." (*Hill Trans. Co.* v. *Southwest Forest Industries, Inc.* (1968) 266 Cal.App.2d 702, 713 [72 Cal.Rptr. 441].)

▮ The pleadings taken as a whole lead to the inescapable conclusion that the fourth cause of action for conspiracy to commit fraud against the beneficiaries is based on a civil conspiracy between an attorney and his client. ▮ We note that Civil Code section 1714.10 unambiguously applies to all alleged conspiracies between an attorney and his client. It is not limited to conspiracies to violate Insurance Code section 790.03. (*Villa Pacific Building Co., supra*, 233 Cal.App.3d at p. 11.) The statute expressly states: "*No* cause of action against an attorney *based upon* a civil conspiracy with his or her client . . . ." (Civ. Code, § 1714.10; italics added.) We note

further that the existence of other coconspirators, who are neither attorneys nor clients, does not preclude the applicability of the section. It is frequently the case that alleged attorney-client conspiracies involve third parties. (*Doctors' Co., supra,* 49 Cal.3d 39 (expert witness an alleged coconspirator); *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032] (outside adjustor an alleged coconspirator).) Finally, it seems clear that, in order for this section to apply, the alleged conspiracy must arise in some fashion out of the attorney-client relationship. The allegation of a civil conspiracy between two individuals who happen to have an attorney-client relationship in another context, which does not arise out of the attorney-client relationship, does not impair the attorney-client relationship and, therefore, does not affect the proper administration of justice. The procedural safeguards of Civil Code section 1714.10 are, thus, unnecessary.

 The fourth cause of action alleging that attorneys Lyman (and his law firm) and Cuthbert conspired with their clients, the former trustees, and the financial adviser and brokers of the former trustees to defraud the beneficiaries of the Trust is a cause of action based on a civil conspiracy between an attorney and his client within the meaning of Civil Code section 1714.10. We conclude that demurrers on the ground that the fourth cause of action did not comply with Civil Code section 1714.10 should be considered by the trial court on remand. If the trial court sustains demurrers to the fourth cause of action on this ground, appellants should be given leave to amend in order to show compliance with Civil Code section 1714.10.[14]

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to overrule the demurrers as to the second cause of action and to reconsider the demurrers as to the fourth cause of action on the ground of failure to comply with Civil Code section 1714.10. The parties shall bear their own costs on appeal.

Turner, P. J., and Ashby, J., concurred.

---

[14]We express no opinion as to the effect of the recent amendments to Civil Code section 1714.10 on this complaint.