[No. B118042. Second Dist., Div. Four. Jan. 22, 1999.]

WESTAMCO INVESTMENT COMPANY et al., Plaintiffs and Respondents, v.
JANG W. LEE et al., Defendants and Appellants.

**COUNSEL**

J. W. Lee & Associates and Jang W. Lee for Defendants and Appellants.

Hornberger, Ghazarians & Brewer, Nicholas W. Hornberger and Michael D. Hirsch for Plaintiffs and Respondents.

**OPINION**

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

Appellants appeal from a denial of their motion to strike the complaint based on respondents' failure to comply with Civil Code section 1714.10.[1] We affirm.

---

[1]All statutory references are to the Civil Code unless otherwise indicated.

## FACTUAL BACKGROUND

### Overview of the Case

Respondents Westamco Investment Company, Southwest Capital Investment, and Sherman Gardner (collectively, Westamco) filed a malicious prosecution action against appellants Jang W. Lee and J. W. Lee & Associates (collectively, Lee), and the Bank of Seoul. Lee responded to the complaint by filing a motion to dismiss based on Westamco's failure to comply with the provisions of section 1714.10. That statute requires a party to petition for a judicial determination of a reasonable probability of prevailing as a condition precedent to filing an action against an attorney for conspiring with his or her client based on the attorney's representation of the client. It is undisputed that Westamco did not petition for such a determination. However, before considering the application of section 1714.10 to this matter, we must first review the underlying circumstance that spawned Westamco's malicious prosecution action.

### The Underlying Litigation

In June 1991, Westamco sold to Eun Sook Yang and David Hoi Chul Yang (collectively, the Yangs) the Pinetree Car Wash located in Covina, California, and took back a promissory note for $580,000 secured by all assets of the car wash. Westamco perfected its lien on July 21, 1991, by filing a UCC-1 financing statement covering "All furniture, fixtures, equipment, merchandise inventory, leasehold interest, leasehold improvements, contracts, contract rights, accounts receivable, collateral of the same or similar type currently owned or hereafter acquired by [the Yangs] located in the premises" of the car wash.

In September 1991, the Yangs borrowed $150,000 from the Bank of Seoul (the Bank) and executed a promissory note in that amount in favor of the Bank and secured it by granting the Bank a lien on all of the personal property at the car wash. The Bank perfected its lien on September 30, 1991, by filing a UCC-1 financing statement covering all personal property and fixtures of the car wash, including equipment, goods, documents, instruments, general intangibles, etc.

In December 1992, the car wash began losing money and the Yangs defaulted on the Westamco note. A receiver was appointed to take charge of the car wash. Ultimately, the Yangs filed for bankruptcy. In July 1993, the bankruptcy was determined to be a "no asset" proceeding, and the bankruptcy stay was lifted. In October 1994, Westamco foreclosed and took

possession of the car wash's assets, giving notice to the Bank and others that the assets, excluding the goodwill of the former business under the trade-name "Pinetree Car Wash," would be sold at auction.

Earlier, in July 1994, the Bank had filed a declaratory relief action to enforce its lien, seeking a determination that the Bank's lien on "general intangibles" gave the Bank a lien on the car wash's goodwill that had priority over Westamco's lien. Westamco filed a motion for summary judgment on the ground that the car wash had no goodwill as a result of its having been closed for two years due to its bankrupt status. The Bank filed opposition to Westamco's motion for summary judgment and moved to amend its complaint to allege claims for intentional interference with pro-spective economic advantage and claim and delivery. The court denied the Bank's motion to amend and granted Westamco's motion for summary judgment. On June 30, 1995, the Bank filed a notice of appeal. On appeal, the summary judgment was affirmed on March 15, 1996.

Immediately upon filing its notice of appeal, the Bank also filed a second lawsuit against Westamco alleging causes of action for claim and delivery and intentional interference with prospective economic interest, essentially the same claims asserted in the Bank's unsuccessful motion to amend the first complaint in the first action. On August 28, 1996, the court granted Westamco's motion for summary judgment in the second lawsuit.[2] That judgment was not appealed.

In both lawsuits, including the appeal of the first, the Bank was repre-sented by Lee as counsel of record.

### The Malicious Prosecution Action

On August 26, 1997, Westamco filed the present action for malicious prosecution against both the Bank and Lee. The complaint is essentially an embellished reprise of the events and circumstances described above. Lee responded by filing a motion to strike based on section 1714.10, contending that the malicious prosecution complaint, in effect, alleges a cause of action against Lee for a civil conspiracy with Lee's client, the Bank, to contest the dispute with Westamco.

In relevant part, section 1714.10 provides: "(a) No cause of action against an attorney for a civil conspiracy with his or her client arising from any

---

[2]The order for summary judgment in the second lawsuit indicates that the complaint was amended, deleting the causes of action for claim and delivery and intentional interference with economic interest and alleging a new cause of action for fraud.

attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action. The court may allow the filing of a pleading claiming liability based upon such a civil conspiracy following the filing of a verified petition therefor accompanied by the proposed pleading and supporting affidavits stating the facts upon which the liability is based. . . . [¶] (b) Failure to obtain a court order where required by subdivision (a) shall be a defense to any action for civil conspiracy filed in violation thereof. The defense shall be raised by the party charged with the civil conspiracy upon that party's first appearance by demurrer, motion to strike, or such other motion or application as may be appropriate. Failure to timely raise the defense shall constitute a waiver thereof. [¶] . . . [¶] (d) This section establishes a special proceeding of a civil nature. Any order made under subdivision (a), (b), or (c) which determines the rights of a petitioner or an attorney against whom a pleading has been or is proposed to be filed, shall be appealable as a final judgment in a civil action."

The trial court denied Lee's motion to strike the complaint. Lee appealed the order pursuant to section 1714.10, subdivision (d).

### DISCUSSION

■ Lee's motion was premised on the assumption that the terms of the complaint allege that Lee conspired with the Bank based on Lee's representation of the Bank in its two lawsuits and one appeal contesting the priority of Westamco's lien rights. The singular focus of Lee's contention is the complaint's allegations that "On or about July 25, 1994 the Bank, *by and through* Lee and J. W. Lee, filed a Complaint in the Superior Court . . . alleging four causes of action against [Westamco] . . ."; "[o]n or about June 30, 1995, the Bank, *by and through* Lee and J. W. Lee, filed a Notice of Appeal with the Second District Court of Appeal"; and "[o]n or about June 30, 1995, defendant Bank, *by and through* Lee and J. W. Lee, filed a new complaint in the Los Angeles Superior Court . . . ."[3] (Italics added.) Lee maintains this phraseology of the complaint establishes a nexus between Lee and the Bank so as to constitute a pleading of a civil conspiracy within the ambit of section 1714.10. We disagree.

---

[3]In addition to the quoted provisions of the malicious prosecution complaint, it contains the same allegations—"the Bank, by and through Lee and J. W. Lee"—in other parts of that pleading.

Section 1714.10 was enacted in 1988 to limit the holding in *Wolfrich Corp.* v. *United Services Automobile Assn.* (1983) 149 Cal.App.3d 1206 [197 Cal.Rptr. 446]. (*Hung* v. *Wang* (1992) 8 Cal.App.4th 908, 919-920 [11 Cal.Rptr.2d 113].) In *Wolfrich*, an insured sued an insurance company and the attorneys representing the insurance company for conspiracy to violate section 790.03 of the Insurance Code. The Court of Appeal held that even though the attorneys were not in the insurance business and could not be sued for violating the Insurance Code, they could be sued for conspiring with their clients to violate the Insurance Code.[4]

Notwithstanding the Legislature's intent to diminish meritless actions against attorneys representing insurance companies, section 1714.10 is not so narrowly drafted or applied. The statutory requirement for a judicial determination of a reasonable probability of prevailing has been held to apply in a variety of circumstances. (See, e.g., *Villa Pacific Building Co.* v. *Superior Court* (1991) 233 Cal.App.3d 8 [284 Cal.Rptr. 227] [lawyers engaged to perform transactional work for real estate investors sued for conspiring with clients to misappropriate assets]; *Pierce* v. *Lyman* (1991) 1 Cal.App.4th 1093 [3 Cal.Rptr.2d 236] [attorney representing trustees sued for civil conspiracy with trustees in an action for fraud and breach of fiduciary duty]; *Howard* v. *Superior Court* (1992) 2 Cal.App.4th 745 [3 Cal.Rptr.2d 575] [attorneys representing the buyers of real property who drafted allegedly false documents sued as having "aided and abetted" their clients].)

In *Villa Pacific Building Co.* v. *Superior Court, supra,* 233 Cal.App.3d at page 11, and *Pierce* v. *Lyman, supra,* 1 Cal.App.4th at pages 1100 and 1109, the complaints specifically alleged a *conspiracy* between the attorney and client. In *Howard* v. *Superior Court, supra,* 2 Cal.App.4th 745, the appellate court equated the allegations of "aiding and abetting" to be the equivalent of alleging a civil conspiracy. Here, the complaint does not even coincide with the fundamental rationale for discouraging civil conspiracy causes of action against an attorney. "The major significance of a conspiracy cause of action 'lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity. [Citations.]' " (*Id.* at p. 748.) The *Howard* court reasoned: "In the abstract, there may be a distinction between an aiding and abetting cause of action and one for civil conspiracy. [Fn. omitted.] However, while aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to

---

[4]*Wolfrich* was disapproved by the Supreme Court in *Doctors' Co.* v. *Superior Court* (1989) 49 Cal.3d 39, 49 [260 Cal.Rptr. 183, 775 P.2d 508].

participate in tortious activity for the purpose of assisting another in performing a wrongful act. A plaintiff's object in asserting such a theory is to hold those who aid and abet in the wrongful act responsible as joint tortfeasors for all damages ensuing from the wrong. [Citation.] Because the conduct of which petitioners are accused falls within the ambit of former section 1714.10, [the plaintiff] was obligated to comply with that section prior to filing a civil action." (*Id.* at p. 749.)

The merit of Lee's position rests on its premise that the allegation that the Bank acted "by and through Lee" is sufficient to state a cause of action for civil conspiracy. Lee urges the phrase is the equivalent of "aiding and abetting" or "civil conspiracy." We disagree. Westamco's complaint simply does not cast the wide net of civil conspiracy. The description of the Bank's filing of the first and second complaints "by and through" Lee does not plead any conspiracy or union of conduct between the Bank and Lee. It is merely descriptive of the client's conduct in the underlying proceeding. The complaint pleads a wholly independent cause of action for malicious prosecution against Lee.

Stated another way, it is unnecessary to plead a civil conspiracy to pursue a malicious prosecution action against an attorney who files and prosecutes an action on behalf of a client. Even though Westamco pleads that the Bank acted by and through Lee, the complaint alleges the particular misfeasance of Lee: ". . . the Defendants acted without probable cause in bringing the afore-mentioned lawsuits against Plaintiffs in that, in no conceivable way, could it honestly and reasonably believe that there were grounds for said actions. Moreover, it is absolutely apparent that the Defendants had no reasonable belief that any of the afore-mentioned civil claims and/or respective theories of relief/causes of action, as tried before the Court were tenable. *Furthermore, had Defendants, Lee and J. W. Lee, properly, fully and reasonably investigated the facts and the law with regard to the afore-mentioned claims, all of the Defendants would have realized, as did each and every Court which heard/reviewed the underlying actions, that said claims/theories of recovery, especially the fraud and deceit cause of action, were untenable.*" (Italics added.) Thus it is clear that Westamco seeks to hold Lee, the attorneys, independently liable for Lee's failure to investigate and for Lee's prosecution of untenable claims. To do so does not require any determination that the client (the Bank) is liable.

An attorney may be sued and held separately liable by a third party for malicious prosecution based on representation of a client where there is no probable cause and no tenable basis for pursuing the underlying action. (*Norton* v. *Hines* (1975) 49 Cal.App.3d 917, 921 [123 Cal.Rptr. 237] ["In the

case at bar a former litigant is suing adverse counsel. . . . If a cause of action exists against attorneys for the reasons alleged here, it must be pleaded as an action for malicious prosecution."]; *Weaver* v. *Superior Court* (1979) 95 Cal.App.3d 166, 192 [156 Cal.Rptr. 745] ["The propriety of a cause of action for malicious prosecution against an attorney . . . is bottomed on the allegation and proof of the following three factors: (1) The prior civil action against the plaintiff must have terminated in the plaintiff's favor; (2) a defendant-attorney must have lacked probable cause in representation of his client in the prior action; and (3) the defendant-attorney must have acted maliciously therein." (Italics omitted.)]; *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 881 [254 Cal.Rptr. 336, 765 P.2d 498] ["Lest there be any confusion, however, we strongly emphasize that our conclusion in this regard does not by any means suggest that an attorney who institutes an action which he does not believe is legally tenable is free from the risk of liability for malicious prosecution."].) It is evident that Westamco has pleaded all the necessary elements to establish an independent cause of action against Lee for malicious prosecution and not one in furtherance of a civil conspiracy with the Bank.

In sum, section 1714.10 simply does not apply to a malicious prosecution action against an attorney who is alleged to have prosecuted a claim without probable cause and adequate investigation and which any reasonable attorney would have recognized as untenable. Westamco alleges those elements in its complaint against Lee. Accordingly, we agree with the trial court's order of denial of Lee's motion to strike.

DISPOSITION

The order is affirmed.

Hastings, J., and Curry, J., concurred.

A petition for a rehearing was denied February 10, 1999, and the petition of appellant Jang W. Lee for review by the Supreme Court was denied April 14, 1999.