Filed 10/29/24  P. v. Mack CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062401 |
| v. | (Super. Ct. No. RIF1700487) |
| BRUCE MACK et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Riverside, Timothy J. Hollenhorst, Judge. Affirmed in part and remanded with directions.

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant Bruce Mack.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant Jamie Yvonne Mack.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel J. Hilton and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendants Bruce and Jamie Mack, husband and wife (the Macks), appeal from a judgment finding them criminally liable for multiple counts of recording a false document. (Pen. Code, § 115, subd. (a).)[1] They recorded various documents pertaining to two properties they had owned, but which had been foreclosed upon. Despite the foreclosures, they filed for bankruptcy and listed the properties as assets. At trial, the Macks testified that because the properties were not disposed of in the bankruptcy proceeding, they believed the properties returned to them and thus they owned the properties. They argued they did not *knowingly* record a false document and could not be held criminally liable. They requested a standard mistake of fact jury instruction, but the court refused it, instead giving a jury instruction on mistake of law. On appeal, the Macks contend this was prejudicial error. We agree the court erred, but we conclude the error was harmless and affirm the underlying conviction.

However, one aspect of the judgment requires partial reversal: The parties agree, as do we, that a probation condition requiring Bruce Mack to participate in any treatment recommended by his probation officer was an unconstitutional delegation of authority to the probation officer. We will remand and direct the court to strike the probation condition. The court may, in its discretion, impose a more specific condition.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

FACTS

I.

THE VIA DEL RIO PROPERTY (COUNT 1 AGAINST BOTH DEFENDANTS)

In 1992, the Macks purchased a home located at 1404 Via Del Rio, in Corona, California (the Via Del Rio Property). In April of 2009, the property was sold in a foreclosure sale (also known as a trustee's sale). The new owner was H&R Block Bank. The Macks had no ownership interest in the Via Del Rio Property at that time.

In June of 2009, H&R Block Bank filed an unlawful detainer action against the Macks. In September 2009, after a trial in the unlawful detainer action, the Macks were formally evicted.

That same year, the Via Del Rio Property was purchased by Abbas Faradjollah from H&R Block Bank. The property was in poor condition at the time. Faradjollah repaired the property and rented it out to tenants. Faradjollah pays the property taxes and homeowner's association fee associated with the property.

In October of 2014, the Macks recorded a "Correction of Grant Deed," which forms the basis of count 1. This document purported to correct the deed issued in September of 1992 whereby the Macks acquired the Via Del Rio Property. Whereas the original deed showed Frances Cook as the grantor and the Macks as the grantees, the correction filed by the Macks showed them as both the grantors and the grantees. The correction was accompanied by a "certificate and affidavit of acknowledgment" that contained various statements of dubious coherence. For example: "I/We, Bruce Mack and Jamie Mack are a man and woman living in the presence of Almighty God, is the original issuer, holder of security interest, with indefeasible title to our land, the tract or parcel of land and fixture, and

3

lawful owner(s) of the landed Estate and organizations known as BRUCE MACK and JAMIE MACK, and it's real property, and interest, under the seal, 'BURROW ESCROW CO.,' or it's derivation (dba), am recorded as the Grantees on the Grant Deed for the real estate described as follows: . . . ." "By our freewill act and deed, we execute this acknowledgment of our lawful acceptance of the delivery and ownership of the said deed, and lawful ownership of the real property under the terms of the said Deed. We ask that the record on file in the Office of the Register of Deeds be updated, to show our lawful acceptance of the Grant Deed and as lawfully seized owner(s) of the real estate in fee simple absolute (*seisin*). [APN: 101- 171- 143- 0] Thereby perfecting and correcting the Deed, without any intent of granting or assigning or selling or exchanging any right regarding said deed lawfully accepted by us, or regarding any property listed or inferred thereon, to any person(s) other than ourselves, Bruce Mack and Jamie Mack a man and a woman, flesh and blood, sui juris, sole owner(s)." "All of our other real property and interest issues for this real estate, the tract or parcel of land and fixture, and its gain are to be immediately returned to the Estate that we are the beneficiaries of."

Faradjollah testified that as a result of the correction of grant deed, title was clouded to his property, and he was unable to sell it to support his retirement as he had planned. He also testified that someone taped a no trespassing sign to the front door and delivered a copy to him. This caused Faradjollah's tenant to question whether Faradjollah legally owned the property and whether the tenant should find a new rental property.

4

## II.

### THE BLUFF VISTA PROPERTY (COUNTS 2 )

In September 2006, Jamie Mack purchased a residence at 17201 Bluff Vista Court, Riverside, California (the "Bluff Vista Property"). In June 2008, the lender, Citibank N.A. (Citibank), foreclosed upon the property. From that time, Citibank was the owner of the Bluff Vista Property, and the Macks had no ownership interest. In 2008, Citibank filed an unlawful detainer suit to remove the Macks from the Bluff Vista Court Property.

In May 2012, Jamie Mack recorded a rescission of trustee's deed upon sale, which forms the basis of count 2. This document purported to rescind the transfer of the Bluff Vista Property to Citibank. It was supposedly recorded by Quality Loan Service Corp. (Quality Loan), which had been the trustee in the foreclosure sale. However, it was signed by someone named Benny George Lopez, who had no affiliation with Quality Loan. Benny George Lopez was a friend of the Macks. Included as exhibits to the recission were various documents purporting to abandon any interest in the Bluff Vista Property, which were signed by six different entities, including Citibank and Quality Loan. However, the person signing on behalf of those entities was Jamie Mack.

In response to the filing of the recission, Quality Loan recorded a notice of rescission to try and undo the effects of Jaime Mack's fraudulent rescission.

In response, in August 2012, Jamie Mack recorded a "notice of rescission of notice of rescission of trustee's deed upon sale," which forms the basis for count 3. This was Jamie Mack's apparent attempt to, once again, wrest title to the Bluff Vista Property back into her name. The document was signed by Duane Anderson on behalf of Quality Loan, but, once again, Duane

5

Anderson had no affiliation with Quality Loan. Attached to this document were the same exhibits signed by Jamie Mack on behalf of six entities, including Citibank and Quality Loan.

At the same time, the Macks recorded a UCC financing statement in which they declared that they own the Bluff Vista Property in fee simple.[2] This formed the basis of count 4 against both defendants.

In October of 2014, Jamie Mack filed a correction of grant deed, which formed the basis for count 5. The correction of grant deed was similar to the one filed in connection with count 1. It attached the original grant deed by which Jamie Mack acquired the Bluff Vista Property from the prior owners, and it purported to "correct" that deed by substituting Jamie Mack as both the grantor and the grantee under the deed.

III.

BANKRUPTCY

Around March of 2011, the Macks filed for bankruptcy. Bruce Mack testified that the two properties were listed as unsecured assets in the bankruptcy, and ultimately, when the bankruptcy suit concluded in September 2013, all assets were abandoned back to the debtors. As a result, Bruce Mack testified he believed the properties belonged to them. Jamie Mack concurred in that testimony.

---

[2] A UCC Financing Statement is a "a vehicle for perfecting a security interest." (*Cassel v. Kolb* (1999) 72 Cal.App.4th 568, 572.) In other words, it creates a lien. (See *Westamco Investment Co. v. Lee* (1999) 69 Cal.App.4th 481, 483.)

PROCEDURAL HISTORY

In a second amended information, defendant Bruce Mack was charged with two counts of recording a false instrument (Penal Code, §115, subd. (a)); counts 1 and 4.) Defendant Jamie Mack was charged with five counts of recording a false instrument. In connection with count 1, it was further alleged that the defendants damaged the property in an amount exceeding $65,000 within the meaning of former Penal Code section 12022.6. After trial, a jury found the Macks guilty on all counts, and found it to be true that they had caused damage exceeding $65,000.

The court suspended imposition of sentence and placed Bruce Mack on two years' felony probation with a variety of terms and conditions, including that he "participate and complete at your expense any counseling, rehabilitation/treatment program deemed appropriate by probation officer." Similarly, the court suspended sentence and placed appellant Jamie Mack on two years' probation, but did not include the same condition regarding rehabilitation and treatment programs. Both defendants appealed.

DISCUSSION

I.

THE COURT ERRED IN FAILING TO GIVE A MISTAKE OF FACT INSTRUCTION, BUT THE ERROR WAS HARMLESS

The Macks' primary contention on appeal is that the court erred by failing to instruct the jury on a mistake of fact defense. At trial, defendants requested a jury instruction on mistake of fact (i.e., CALCRIM No. 3406).[3] This was based on the defendants' testimony that they believed

---

[3] CALCRIM 3406 states: "The defendant is not guilty of <insert

7

the bankruptcy proceeding had given them back title to the properties. Section 115 makes it a crime to "*knowingly* procure . . . any false or forged instrument to be . . . recorded . . . ." Defendants argued that their mistake of fact negated the scienter element of the crime.

The court denied the request, reasoning that "whether or not they own that property" is "a question of law, not a fact." "Their property rights were terminated. That's . . . not a question of fact." The court instead gave a mistake of law instruction based on CALCRIM No. 3407, which stated, "It is not a defense to the crime of Penal Code section 115, filing a false document, that the defendants did not know they were breaking the law or that they believed their act was lawful." Defendants contend this was error. We agree.

Generally, a defendant is entitled to any requested instruction that is relevant to a defense, an accurate statement of the law, and supported by the evidence. (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 851; *People v. Ponce* (1996) 44 Cal.App.4th 1380, 1386.) We review claims of instructional error de novo. (*People v. Speck* (2022) 74 Cal.App.5th 784, 791.)

Section 26 provides, in pertinent part, that persons who "committed the act or made the omission charged under an ignorance or mistake of fact, which disproves a criminal intent," are not criminally liable

---

crime[s]> if (he/she) did not have the intent or mental state required to commit the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact. [¶] If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit <insert crime[s]>. [¶] If you find that the defendant believed that <insert alleged mistaken facts> [and if you find that belief was reasonable], (he/she) did not have the specific intent or mental state required for <insert crime[s]>. [¶] If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for <insert crime[s]>, you must find (him/her) not guilty of (that crime/those crimes)."

for the act. Although mistake of fact is often described as a "defense" to a charge, that "term is somewhat misleading, because mistake of fact is, generally speaking, 'not a true affirmative defense.'" (*People v. Hendrix* (2022) 13 Cal.5th 933, 940 (*Hendrix*).) "It is, rather, an assertion by the defendant that a particular factual error in his perception of the world led him to lack the mens rea required for the crime." (*Ibid.*) In this sense, it is more in the nature of a failure-of-proof defense. (*Ibid.*)

On the other hand, a mistake of law is usually not a defense to a crime. "Generally, mistake of law is not a defense to a crime. [Citation.] 'If the act itself is punishable when knowingly done, it is immaterial that the defendant thought it was lawful.' [Citation.] Criminal intent in a general intent crime 'is merely the intent to commit the prohibited act, not the intent to violate the law.'" (*People v. Cole* (2007) 156 Cal.App.4th 452, 483.)

Drawing the distinction between a mistake of fact and a mistake of law can be tricky, particularly where the mistake is about a legal status. In drawing that distinction, our high court explained: "There are a number of circumstances . . . in which violation of a penal statute is premised on the violator's harboring a particular mental state with respect to the *nonpenal* legal status of a person, thing, or action. In such cases, the principle is 'firmly established that defendant is not guilty if the offense charged requires any special mental element, such as that the prohibited act be committed knowingly, fraudulently, corruptly, maliciously or wilfully, and this element of the crime was lacking because of some mistake of nonpenal law.' [Citation.] [But] the mistake must be one of *nonpenal* law. [Citation.] Thus, a taxpayer may defend against a [tax fraud] charge on the basis, for example, that he mistakenly believed certain deductions were proper under the tax laws, but

not on the basis that he was unaware it was a crime to lie on one's tax return." (*People v. Hagen* (1998) 19 Cal.4th 652, 661, fn. 4.)

Here, we confront precisely the situation our high court described: defendants claim to be mistaken about ownership of property — a *nonpenal* aspect of the law — and that mistake serves to negate the scienter element of Penal Code section 115 (i.e., knowing the document was false or fraudulent). On these facts, defendants were entitled to a mistake of fact instruction.

The error the trial court seems to have made is in thinking that any *question of law* is automatically a mistake-of-law scenario. That is not accurate. As the Bench Notes to CALCRIM No. 3407 state, "Although concerned with knowledge of the law, a mistake about legal status or rights is a mistake of fact, not a mistake of law." (Judicial Council of Cal., Crim. Jury Instns. (2024) Bench notes to CALCRIM No. 3407.)

Having found the court erred, we next consider whether the error was prejudicial. We conclude it was not.

In deciding whether instructional error was prejudicial, we apply the state law test articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836, and consider whether it is reasonably probable that the outcome would have been different in the absence of the error. (*Hendrix, supra,* 13 Cal.5th at p. 942.) As a general matter, this test applies to ""incorrect, ambiguous, conflicting, or wrongly omitted instructions that do not amount to federal constitutional error.""[4] (*People v. Beltran* (2013) 56 Cal.4th 935, 955.)

---

[4] In contrast, we would apply the stricter federal test articulated in *Chapman v. California* (1967) 386 U.S. 18 had the jury been misinstructed in a manner that amounted to relieving the People of proving an element of the crime.

10

The error was harmless for two reasons.

First, as noted above, the nature of the mistake-of-fact defense is really a failure-of-proof defense. The jury knew what proof was required of the People. The jury was properly instructed on the elements of section 115, and it was properly instructed that the People had to prove each element of the crime beyond a reasonable doubt.

Second, the closing arguments demonstrated that the jury was well informed on the issue of whether defendants knew the documents to be false. The prosecutor acknowledged that the crux of the trial turned on whether defendants knew the documents they filed were false when they filed them. The prosecutor declared: "Intent is the issue in this case." The prosecutor went on to argue extensively about what the defendants knew.

Bruce Mack's counsel then took his turn and continued the theme: "The law says knowledge. They got to know [N]ot that they should know, not that I know, not that anybody with common sense would know. They got to know." His entire argument was about what Bruce *believed* when he filed the relevant documents. If Bruce was simply mistaken, "That's not a crime. That's a civil offense . . . . It's not a crime if they didn't do it with knowledge that the documents are fake or forged."

Jamie Mack's counsel jumped on the same bandwagon: "As my learned friend [i.e., Bruce's counsel] just said, the key issue was knowledge. [¶] What was the knowledge going on in my client Jamie Mack . . . .?" Her argument proceeded to focus exclusively on what Jamie Mack believed when she filed the relevant document.

The prosecutor, in her rebuttal, portrayed the defendants as "plugging [their] finger in [their] ears yelling no, no, no, no, no." "It is knowledge that matters, not what you believe or you hope to be true. They

11

can hope all they want, but the knowledge is they know they don't own the property." "This is not a good faith belief that they had."

The overwhelming focus of the closing arguments correctly informed the jury that the Macks had to know that the documents they filed were false, and if they were mistaken about that fact, they were not guilty of a crime. We do not believe that a mistake-of-fact instruction would have materially changed anything about the trial. The jury simply did not believe the Macks held a good faith belief that the documents they filed were true. Accordingly, the instructional error was harmless.

## II.

## THE PROBATION CONDITION THAT BRUCE PARTICIPATE IN ANY COUNSELING THE PROBATION OFFICER RECOMMENDS IS UNCONSTITUTIONAL

Finally, the parties agree that Bruce's probation condition that he "participate and complete at [his] expense any counseling, rehabilitation/treatment program deemed appropriate by probation officer" is unconstitutional. The fundamental problem is that setting the conditions of probation is a judicial function, yet a probation condition that places so much decision making in the hands of a probation officer essentially delegates to the executive branch what is a judicial power.

Probation officers enjoy broad discretion in carrying out court orders. (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1372-1373.) The probation department is vested with the power to "set the time and place for administration" of court-ordered probation conditions. (*People v. Kwizera* (2000) 78 Cal.App.4th 1238, 1240.) "Probation officers have wide discretion to enforce court-ordered conditions, and directives to the probationer will not require prior court approval if they are reasonably related to previously imposed terms." (*Pedro Q.*, at p. 1373.)

However, the probation conditions themselves must be set by the court. "Under the separation of powers doctrine [Citation], judicial powers may not be delegated to nonjudicial officers. [Citation.] While the probation officer may properly specify the details necessary to effectuate the court's probation conditions, it is the court's duty to determine the nature of the requirements imposed on the probationer." (*People v. Smith* (2022) 79 Cal.App.5th 897, 902 *(Smith).*) "By leaving key determinations to be decided ad hoc, a vague probation condition may . . . result in an impermissible delegation of authority to the probation officer." (*Ibid.*)

In *Smith* a probation condition was deemed constitutionally infirm where it directed the defendant to participate in "any treatment/therapy/counseling program, including residential, as directed by the probation officer." (*Smith, supra,* 79 Cal.App.5th at p. 902.) Although the condition survived a vagueness challenge, it did so only because there was a context showing that a substance abuse assessment was ordered, and the treatment would be tailored to the results of the assessment. However, the condition was an improper delegation of authority to the probation officer because a residential program imposes far greater burdens than other types of programs. (*Id.* at p. 903.)

Here, both parties agree that a condition permitting the probation officer to order *any* type of counseling or treatment program was an improper delegation of authority. We agree. We believe this case is a more severe constitutional violation than in *Smith* because, there, the defendant's substance abuse program provided some context. Here, it is not clear what sort of treatment program would be appropriate. The court essentially gave the probation officer carte blanche to create conditions of probation.

## DISPOSITION

With respect to the probation condition permitting a probation officer to determine a counseling/rehabilitation/treatment program, the matter is remanded with directions that the court strike that condition. The court may, in its discretion, impose a more specific condition concerning treatment. In all other respects, the judgment is affirmed.

SANCHEZ, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


GOODING, J.

14