[Civ. No. 15553.   First Dist., Div. Two.   Mar. 31, 1954.]

RALPH M. GRAY, Plaintiff and Appellant, v. JAMES C. SUTHERLAND, Defendant and Appellant; SAMUEL ECKSTEIN, as Trustee in Bankruptcy, etc., Respondent.

Stanley D. Whitney and Stanley C. Smallwood for Plaintiff and Appellant.

Fitzgerald, Abbott & Beardsley for Defendant and Appellant.

Jerome L. Schiller for Respondent.

NOURSE, P. J.—This is an appeal on the judgment roll only. Although the case started out as an action of Gray against Sutherland for breach of a contract to purchase from Gray all the stock of Gray Manufacturing Company (further called the company), the appeal is mainly by Gray and Sutherland from a judgment for Eckstein, the intervener, trustee in bankruptcy of said company (further called the trustee), who recovered $7,000 withdrawn by Gray and Sutherland from the company for the purpose of paying part of the purchase price of said stock.

On May 21, 1947, Gray and Sutherland signed an agreement by which Gray sold his 1,500 shares of stock of company to Sutherland for $15,000, $2,500 down, the balance $1,000 a month with interest starting July 15, 1947, seller to retain title to the stock until fully paid for, buyer to have the management of the corporation from the execution of the agreement, seller to obtain consent for the transfer of the stock from the Commissioner of Corporations, the stock being held in escrow by order of said commissioner.

Gray's amended complaint alleged default in the payment of the installment of February 15, 1948; Sutherland's answer alleged the invalidity of the agreement because of failure to obtain in advance the consent of the commissioner as required by the escrow, that the subsequent consent obtained November 13, 1947, was ineffectual and that defendant had rescinded on the ground of the invalidity, adding a cross-complaint for the $2,500 down payment. When the trustee intervened the complaint and cross-complaint were dismissed.

The complaint in intervention, filed May 6, 1949, alleged company's adjudication in bankruptcy on March 8, 1949, and the appointment of the trustee on April 27th; that Gray was president, director and holder of all 1,500 shares of stock of company; the execution of the stated agreement of sale of stock; that after the execution of the agreement Sutherland became assistant secretary and director of said company and that Gray and Sutherland managed and controlled the com-

pany and completely dominated its board of directors and management; that Gray and Sutherland orally agreed to withdraw from the treasury funds wherewith to make the payments to be made by Sutherland under the agreement; that accordingly from July, 1947, until January, 1948, they made seven withdrawals of $1,000 each; that no consideration was received by company for said withdrawals and that they were made solely for the use and personal benefit of Gray and Sutherland.

The answers to the complaint in intervention differ. Gray admits to be stockholder of record but denies ownership because of the agreement of sale, alleges that about May 21, 1947, the management of company passed to Sutherland and that since then Sutherland only has been in active control; he denies the oral agreement to withdraw funds from company, admits having received $7,000 from Sutherland but denies knowledge of its source. Sutherland denies the validity of the sale, admits an oral agreement that the installment payments due to Gray would be made by company and alleges that this understanding was an inducement for the signing of the sales agreement and that he did not know that the sales agreement and the payments made by the company thereunder were illegal, that he never actually managed or controlled company, that he accepted the office of assistant secretary and director in the belief that the sales agreement was valid, that he did not cause the payment from company funds of the $7,000 withdrawn to himself or at all, but admits that they were paid by company to Gray.

Both Gray and Sutherland amended their answers to the complaint in intervention to set up counterclaims against the corporation in the form of common counts. The answers of the trustee to said counterclaims allege among other things. the defenses that the counterclaims are provable in bankruptcy and only entitled to the same percentage as other general creditors of the bankrupt company, whereas the claim of the trustee is one to recover assets illegally removed from company having the character of trust funds for the benefit of creditors of company, which trustee is entitled to recover without any offset which would give claimants preference over other creditors and further that there is no mutuality between the claims of the trustee and the counterclaims.

The findings of the court comprise approximately the truth of the stated allegations of the complaint in intervention of

the trustee (there is no finding that Gray and Sutherland dominated the corporation) and of his stated defenses to the counterclaims and further that both Gray and Sutherland had full knowledge of the withdrawals from the treasury of the company and that they were made with the intent to apply them for their own use and benefit and not for the use and benefit of company; that the withdrawals were never authorized or ratified by the board of directors of company; that when the funds were withdrawn there were existing creditors of the company who have never been paid; there are also findings as to the escrow order and regulations, and the absence of prior consent and granting of subsequent consent by the commissioner.

The conclusions of law are in substance: 1. That Gray and Sutherland took and withdrew the seven amounts of $1,000 each from the treasury of company "without right, leave or authority" and without consideration solely for their own personal benefit. 2. That the sale contract was invalid. 3. That the sums withdrawn were trust funds for the benefit of the creditors of company and that the trustee is entitled to have them without any offset. 4. That trustee have judgment for the sums withdrawn with 7 per cent interest from the date of each withdrawal. 5. That Gray and Sutherland take nothing.

Gray and Sutherland have filed and briefed their appeals separately. Both contend that the allegations of the trustee and the findings are insufficient to state a cause of action for statutory liability under the Corporations Code or the corresponding previous provisions of the Civil Code (the Corporations Code went into effect on September 19, 1947, and some withdrawals were made before, some after that date), and that these statutory provisions are so exhaustive that no common-law liability can exist apart from them.

Appellants do not attack any of the findings, which contain facts not alleged in the pleadings, as being outside the issues of the case. The only question before us on this judgment roll appeal is, therefore, whether the findings support the decision. We have concluded that they do.

Both appellants urge at length that the findings are insufficient as a basis for liability under sections 824-826, Corporations Code. This may be conceded. Under those sections a director who authorizes or ratifies the unlawful withdrawal or distribution of assets of a corporation among its stockholders is held liable only "for its debts and liabilities exist-

ing at the time of the violation and for the full amount of any loss sustained by such holders and owners of shares, other than shares upon which any such payment or distribution was made . . ." Here there were no such innocent shareholders and no amount of debts or liabilities for which defendants could be liable was found. The sections are moreover clearly inapplicable because the liability in this case is not based on any ratification or authorization by defendants as directors, authorization or ratification by the board of directors having been expressly negatived in the findings.

Liability of appellant Gray, who was found to be the only stockholder, can be based directly on section 1510, Corporations Code, which reads in part: "Any shareholder or owner of shares who receives any dividend not authorized by this division, except a distribution covered by Section 5012, with knowledge of facts indicating the impropriety thereof is liable to the corporation or to its receiver, liquidator, or trustee in bankruptcy for the amount so received by him with interest thereon at 7 percent a year until paid." Before its enactment section 364, Civil Code, as amended in 1945 (Stats. 1945, p. 2481) contained a provision so similar that it need not be separately stated. ▌ Prior to the 1945 amendment it had been held with respect to section 364, *supra,* in *Oilwell etc. Co.* v. *Petroleum etc. Co.,* 64 Cal.App.2d 367, 374 [148 P.2d 720], that unauthorized dividends in the meaning of that section were dividends not lawfully declared and also all illegal distributions of capital under whatever name to stockholders. The same must apply to section 1510, Corporations Code, which is derived from section 364, Civil Code. Also in the Corporations Code and in its section 1510 itself there are indications of said wide meaning of dividends as used in said section. ▌ The exception made in the section itself for "a distribution covered by Section 5012" does not relate to a dividend in the narrow meaning of a distribution of surplus. Moreover, the fact that section 827, Corporations Code, gives a wide extent to the duty of the shareholder who has knowingly received an unauthorized dividend, withdrawal or distribution to reimburse a director who has satisfied a liability based on such violation indicates that the direct duty of the shareholder to make restitution to the corporation or its trustee will be equally extensive.

▌ Appellants contend that a dividend, withdrawal or distribution is only unauthorized or improper in the sense

of section 1510, Corporations Code, when it is not made out of available surplus or profits as provided for in section 1500, Corporations Code, or when there is reasonable ground to believe that it will endanger the financial position of the corporation as stated in section 1501, Corporations Code. The language of section 1510 is not so restricted. A stockholder will also have to repay a dividend or withdrawal which he received knowing that it violated any other provision of the general corporation law (tit. I, div. 1, §§ 100-6804 of the code), especially knowing that it was not legally declared, authorized or ratified. ▮ The authority to declare a dividend and to authorize withdrawals or distributions is vested in the board of directors (Corp. Code, §§ 800, 824, previously Civ. Code, §§ 305, 363; *Meyers* v. *El Tejon Oil & Ref. Co.*, 29 Cal.2d 184 [174 P.2d 1]). In the Meyers case the dividend, although irregularly declared in the absence of a duly held meeting of the board of directors, was regarded as authorized and valid because of ratification by all directors. ▮ Here absence of authorization or ratification by the board of directors is expressly found. Appellant Gray's knowledge of the lack of authorization or ratification is necessarily implied in the findings that he was a director, president and sole stockholder of the corporation, and that he had full knowledge of the withdrawals and of the fact that they were made for the personal use and benefit of appellants and not for the benefit and use of the corporation. These findings support a judgment of restitution under section 1510, Corporations Code, in the absence of findings constituting a defense to such action, which findings are not present in this case.

Appellants contend that in a closed corporation, like the one here involved, no formal meetings and resolutions of directors declaring or authorizing dividends or withdrawals are required and that in such corporations any withdrawal made under whatever name without corporate procedure is lawful and proper, unless the corporation or its trustee attacks it on the ground that such withdrawal violates section 1500 or section 1501, Corporations Code, and proves those allegations. As only California authority appellants cite *Brainard* v. *De La Montanya*, 18 Cal.2d 502, in which case it is said on page 511 [116 P.2d 66]: "It is immaterial that no formal directors meetings were held. While it is true that a corporation ordinarily acts by resolutions which are adopted at formal meetings of its board of directors and are entered

in its minutes, it is also true that decisions reached by all the directors and stockholders of a closed corporation at informal conferences will be binding upon the corporation when, by custom and with the consent of all concerned, corporate formalities have been dispensed with and the corporate affairs have been carried on through such informal conferences.'' It is clear at first sight that the language quoted from the Brainard case is far less drastic than the rule advocated by appellants and that the quoted statement is of no avail to them because in this case there are no findings express or implied that all directors informally agreed to the withdrawals and that such informal treatment had been sanctioned by custom and consent of all concerned. Moreover, it is pointed out in the Brainard case that there was no proof that there were any creditors at the time of the transaction, whereas in this case there is a finding that there were such creditors who were never paid.

We do not agree with the contention that in closed corporations informal withdrawals under whatever name made are presumed to be valid dividends in the sense of authorized distributions of surplus or profits. That contention finds no support in the Corporations Code and as a matter of policy it is objectionable. ■■ As sections 800 and 824, Corporations Code, require declaration, authorization or ratification of dividends and withdrawals by the board of directors, a withdrawal without such authorization is prima facie unlawful and no exception is made in the code for closed corporations. To accept for such corporations that the sole stockholder or the combined stockholders may take funds of the corporation for their private use at whatever time and so often as desired without any corporate formality or classification and that such takings are valid and binding unless the corporation or its trustee alleges and proves as to each taking a violation of section 1500 or 1501, Corporations Code, would be an invitation to mismanagement. The absence of personal liability of those who are in business as a closed corporation requires special attention to the keeping intact of the assets of the corporation especially when, as here found, there are unpaid creditors. The rule advocated by appellants must impair the attention to and care of the safety of creditors.

Although, according to the weight of authority, a certain informality in declaring dividends is excused under certain circumstances in closed corporations when no interests of

creditors are involved (see Fletcher, Cyclopedia of Corporations, § 5350; 18 C.J.S., Corporations, § 465; 13 Am.Jur., Corporations, § 671) it is also stated that the corporation must comply with statutory provisions as to the manner of declaring dividends. (11 Fletcher, *supra,* p. 879; 18 C.J.S., *supra,* p. 1106; 13 Am.Jur., *supra,* p. 666.) We do not find authority for any binding rule of common law granting the excessive freedom which appellants claim, extending even to withdrawals which are not made under the guise of distribution of surplus. Wide definitions of the term dividend sometimes found, and urged by appellants, are not decisive. The term dividend is used in different meanings as covering a larger or smaller field. Such different use appears even in our Corporations Code, where, as we have seen, dividend in section 1510 includes all withdrawals or distributions whereas in sections 824-827 the words dividends, withdrawals and distributions are found in juxtaposition. What for some purpose or statutory provision (for instance, for tax statutes to which many cases cited in the texts relate) is considered a dividend, need not be considered a dividend with respect to the excuse of informality or the presumption of legality.

It is our opinion that the presumption of legality which attaches to a declaration of dividend by directors in the manner prescribed by statute (13 Am.Jur. 665-666) does not attach to an informal taking by stockholders in violation of the manner prescribed by statute and devoid of even the semblance of a distribution of surplus, and that the burden to show circumstances which may excuse the violation and legalize the taking in such case is on those who committed the violation.

It does not seem necessary in this case to decide exactly what circumstances if found would have had such effect because of the total absence of any finding which could be effective for that purpose, combined with the conclusion of law that the takings were "without right, leave or authority." The answers to the complaint in intervention show that neither appellant made any contention that the takings were legal and valid as dividends. Gray denied the taking of the amounts and denied knowledge of where the seven payments of $1,000 made by Sutherland on their contract came from. Sutherland admitted that the payments of $1,000 were made by the corporation to Gray and that it was agreed between him and Gray that the corporation would so pay the price of the stock under their contract, but denied that he caused the payments or

that he had knowledge of the illegality of the contract or of the payments made under said contract by the corporation to Gray. Each of the two men tried to put the blame on the other. All the nice legal theories and arguments presented by appellants in this court are belated attempts to cover up the evidently unjustifiable character of the taking, for which the court below found both to be responsible.

Whereas the responsibility of Gray can be based on section 1510, Corporations Code, as we held before, the responsibility of Sutherland, who was not found to be a stockholder, must be based on the general law. Nevertheless, the position of the two appellants under the findings is wholly similar. If Gray's responsibility was not specifically covered by section 1510 he would at any rate be liable under the general law. Although Gray was the stockholder of record, Gray and Sutherland together had the full ownership rights, Sutherland having a growing, Gray a diminishing equity in the stock. It was found that they, Gray being president and director, Sutherland, assistant secretary and director, together, pursuant to their agreement, caused the withdrawals of corporate funds to be made without the required corporate authorization, and for the purpose of using them to their personal advantage. The takings were intended to benefit Sutherland as well as Gray because they would serve as installment payments on the purchase price of the stock which Sutherland had bought from Gray. The fact that Sutherland afterwards chose to attack the validity of the agreement does not change the character of the taking. It was essentially a tortious taking by two joint tort feasors in common agreement and for their common advantage from a corporation to which they stood in a fiduciary relation. There is thus common law liability, both because of tortious acquisition in the manner of conversion (Restatement Torts, § 222; Restatement Restitution, § 128) and because of a breach of a fiduciary duty (Restatement Restitution, § 138). The appellants hold the funds acquired in violation of their fiduciary duty upon a constructive trust (Restatement Restitution, § 190; *Abbot Kinney Co.* v. *Harrah,* 84 Cal.App.2d 728, 734 [191 P.2d 761]) and the trustee is entitled to recover the trust fund in behalf of all creditors. ("If, after satisfying their claims, any of the fund remains, it will belong to the stockholders.") *Dean* v. *Shingle,* 198 Cal. 652, 659, 661 [246 P. 1049, 4 A.L.R. 1156]. As joint tort feasors having acted in concert

appellants are equally liable for the entire taking. (*Reid* v. *Robinson*, 64 Cal.App. 46, 58 [220 P. 676]; Prosser, Torts, p. 329.)

Appellant Sutherland's inconsistent contentions that there is no finding that he was a director at the time of the withdrawals and that as a director he is only subject to the limited statutory liability of sections 824-827, Corporations Code, for which the findings do not constitute a sufficient basis, are both without merit. The first contention is based on the fact that the finding in question (VII) only states that he became director "after the execution of said agreement." Considering the findings in their entirety, among which the provision of the agreement that upon the execution of the agreement the management of the corporation shall go to the buyer, it is clear that "after" in this finding is used in the meaning of "upon" or "immediately after." ▮ Moreover, Sutherland's liability as joint tort feasor (in the manner of conversion) is not dependent on his being a director and he can even be liable for breach of fiduciary duty by colluding with a disloyal fiduciary without being a fiduciary himself. (Restatement Restitution, § 138(2).)

Neither is there any merit in the contention that his liability can only be based on the stated statutory provision and not on the common law. ▮ The correct rule as to the relation of the common law and the statutory law is stated in part as follows in 15 Corpus Juris Secundum, page 620: ". . . the common law is not repealed by implication or otherwise, if there is no repugnancy between it and the statute, and it does not appear that the legislature intended to cover the whole subject." Among the authorities cited in support of the above statement is *Estate of Elizalde*, 182 Cal. 427 [188 P. 560]. See also *Guardianship of Reynolds*, 60 Cal. App.2d 669, 674 [141 P.2d 498], where it is said: "Statutes are not presumed to alter the common law otherwise than the act expressly provides."

▮ The provisions of sections 824-827, Corporations Code, regulate no more than the liability of directors insofar as based on their authorization or ratification of certain unlawful corporate acts in their capacity as directors and do not regulate torts committed by them in any other manner, whether in their capacity as directors or not. Although these code sections may well be intended to limit and exhaust the liability for these special acts of authorization and ratification, they are not inconsistent with any common law liability

for unlawful taking by a director in his own behalf in violation of his fiduciary duty. There is no more reason to consider Sutherland's liability in this case, where he cooperated with the only stockholder in illegal withdrawals to their mutual advantage, as limited by sections 824-827, Corporations Code, than the liability of a director who has simply stolen from his corporation.

The judgment for the trustee both as against Sutherland and against Gray will be affirmed.

In an additional appeal against Gray, Sutherland contends that to avoid a multiplicity of lawsuits the judgment should have provided for Gray's liability over to Sutherland in case Sutherland should satisfy the judgment. This contention is solely based on section 827, Corporations Code, which gives to a director who satisfies a judgment based on violation of section 824 a right of reimbursement against the shareholders who actually received the benefits of the violation. As the judgment for the trustee is not based on any authorization or ratification by Sutherland prohibited by section 824, but on wrongful taking in his own behalf, Corporations Code, section 827, has no application.

Judgment affirmed.

Dooling, J., and O'Donnell, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.