[Civ. No. 43708. Second Dist., Div. Two. Apr. 28, 1975.]

ST. JAMES ARMENIAN CHURCH OF LOS ANGELES,
Plaintiff and Respondent, v.
JOHN KURKJIAN, Defendant and Appellant.

548

COUNSEL

Jess F. High and Thomas J. Koerber for Defendant and Appellant.

E. O. Berry and Gary Kerkorian for Plaintiff and Respondent.

OPINION

COMPTON, J.—During the year 1963, St. James Armenian Church of Los Angeles (church) owned church property at 3200 West Adams Boulevard. Church was contemplating selling said property and acquiring another site for the building of a new church. John Kurkjian was the chairman of the parish council, the administrative body of the church. He was also chairman of a specially created building committee which was given the task of advising the council concerning the acquisition of the new church property.

Baxter Hallaian, a licensed real estate broker and an Armenian, though not a member of the church nor the holder of any official position therewith, was a friend and acquaintance of Kurkjian and other officials of the church. In early 1963, representatives of the Mount Sinai Baptist Church of Los Angeles indicated an interest in purchasing the church property on West Adams. In negotiations which followed it appears that the prospective buyers were represented by a real estate broker, one Foster Price, and the church was represented by Kurkjian, assisted by Hallaian.

On May 17, 1963, Kurkjian presented to the parish council for its approval an offer of purchase from the Mount Sinai Baptist Church for $750,000. The proposal also included the payment of a 5 percent commission in the sum of $37,500 to the Foster Price Realty Company. Kurkjian did not disclose to the parish council, and in fact the evidence establishes that he actively concealed from the council, the fact that by separate agreement Foster Price had agreed to pay Hallaian the sum of $22,500 out of the $37,500 commission. The council approved the transaction and it was ultimately consummated with Hallaian receiving the $22,500 commission as described.

In October of 1963, Kurkjian and Hallaian together contacted the Los Angeles Investment Company concerning the purchase of unimproved

real property owned by the latter at 5814 La Tijera Boulevard. During the negotiations for this purchase Hallaian disclosed that he was in fact a broker and inquired of the representative of the Los Angeles Investment Company if a 5 percent broker's commission would be paid on the purchase. The agreed purchase price was $554,785 and when inquiry was made of the representative of the Los Angeles Investment Company whether the price could be any cheaper, the representative replied "Any chiseling would have to come out of the commission," which he had agreed to pay Hallaian.

On November 24, 1963, the parish assembly met to approve the purchase as recommended by Kurkjian. At that meeting Kurkjian stated to the persons present that Hallaian had been of great assistance and help in obtaining and locating the property and that no real estate broker's commission was to be paid to Hallaian. Hallaian who was present at the meeting took a bow and accepted the applause from the members present. This transaction was subsequently consummated and Hallaian received a broker's commission in the amount of $27,739.25.

On learning of the above described events the church commenced two actions which were consolidated for trial. These actions were against the defendant Kurkjian and against the estate of Hallaian who had died in the interim. Prior to the commencement of the trial the church settled its cases against Hallaian's estate for a gross sum of $20,000. After a nonjury trial the court rendered a judgment in favor of the church and against Kurkjian for the sum of $22,500 in the case involving the sale of the Adams Street property and a judgment in favor of the church and against Kurkjian in the sum of $27,739.25 in the case involving the purchasing of the La Tijera property. These judgments represented the sums which Hallaian received from each of the two transactions and were reduced by the amount which his estate paid in settlement thereof, to wit, $10,000 in each case.

The trial court, in its written findings, found that in the negotiations in both transactions Kurkjian and Hallaian were church's agents and fiduciaries and that, for the purpose of inducing the church to approve the transactions, they conspired together to conceal from the church the fact that Hallaian was receiving a commission in each of these transactions.

From this the trial court concluded that Kurkjian and Hallaian were jointly and severally liable for the amount of the commissions secretly paid to Hallaian. Kurkjian has appealed.

Kurkjian does not, and obviously he could not, dispute the finding that he was, as chairman of the building committee and the parish council, acting in a fiduciary capacity for the church, and as such had a duty of full disclosure to his principal.

█ Section 2230 of the Civil Code charges an agent with the duty of fullest disclosure of all material facts concerning the transaction in question that might affect the principal's decision. (*Menzel* v. *Salka,* 179 Cal.App.2d 612 [4 Cal.Rptr. 78]; *Rattray* v. *Scudder,* 28 Cal.2d 214 [169 P.2d 371, 164 A.L.R. 1356].) The rule is applicable to gratuitous agents as well as compensated agents. (1 Witkin, Summary of Cal. Law (8th ed.) Agency and Employment, § 103, pp. 717, 718; Rest.2d Agency, § 378.)

There is no serious dispute in this case of the fact that Kurkjian breached his fiduciary duty to the church in concealing from it the agreements by which Hallaian was to receive the commissions on the two transactions. From the requirement of disclosure by a fiduciary, there arises a presumption that the principal is damaged by a breach of that duty.

The essential question to be answered is the amount which the church is entitled to recover from Kurkjian as a result of his breach. █ Since the trial court found that Kurkjian did not receive any of the commission, there are no funds in Kurkjian's hand upon which a constructive trust can be imposed. "One cannot be held to be a constructive trustee of something he has not acquired." (*Ward* v. *Taggart,* 51 Cal.2d 736, at p. 742 [336 P.2d 534].)

The trial court's judgment in effect declared that the church was damaged in an amount measured by the commissions which Hallaian received, or alternately that the church was entitled to recover from Kurkjian the secret commissions which he caused to flow to Hallaian. Kurkjian argues that this was error because there was no evidence that Hallaian was an agent of the church, that in fact Hallaian was lawfully entitled to receive the commission, and the church offered no evidence that it suffered any "out-of-pocket" damage in the transactions. We disagree.

█ It may reasonably be inferred that, in both transactions, had Kurkjian been true to his trust the church would have been able to benefit by the amount which went to Hallaian. Since Price was obviously willing to take only $15,000 as commission on the sale of the Adams property, the remaining $22,000 that went to Hallaian would have been

retained by the church. Los Angeles Investment appeared ready to negotiate on the price to be paid for the La Tijera property and to sell without commission, thus it can be inferred that the church could have acquired the La Tijera property at a price reduced by the amount which went to Hallaian by way of commission.

The evidence points to the conclusion that both Hallaian and Kurkjian knew that the church would not have approved of the transactions had it known the facts. There is also substantial evidence in the record, albeit circumstantial, to support the conclusion that Hallaian knew of Kurkjian's breach of the latter's fiduciary duty and that the two conspired to keep secret Hallaian's receipt of the commissions.

The fact that Hallaian agreed with Foster Price to share in the commission to be paid by the seller of the West Adams property, points to the conclusion that Hallaian was an agent of the church. The fact that Hallaian accompanied Kurkjian to the office of the Los Angeles Investment without previously being engaged as a broker for the latter, indicates that he was acting with Kurkjian in representing the church.

As a real estate broker, Hallaian had the duty to be honest and truthful in his dealings. (See Bus. & Prof. Code, §§ 10150, 10176; *Rattray* v. *Scudder, supra.*) The best that can be said for Hallaian is that, in both transactions, he at least was acting in a dual capacity. In such a situation he was required to make full disclosure to both parties to the transaction. (Bus. & Prof. Code, § 10176, subd.(d); 3 C.J.S., Agency, § 277, pp. 50-51.)

Even assuming arguendo that Hallaian was not technically an agent of the church, public policy does not permit one to take advantage of his own wrongs. (Civ. Code, § 3517; see *Ward* v. *Taggart, supra.*)

A person, though himself not a fiduciary, is liable for the breach of a fiduciary duty if he colludes with a disloyal fiduciary. (*Gray* v. *Sutherland,* 124 Cal.App.2d 280 [268 P.2d 754].)

Whether the money which Hallaian received be characterized as secret "commissions" or secret "profits," the church had a right to recover it.

Section 3343[1] of the Civil Code does not apply to a tort action to recover

---

[1]Civil Code section 3343 provides in pertinent part:
"(a) One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction, . . ."

secret profits. "[T]he principal's right to recover does not depend upon any deceit of the agent, but is based upon the duties incident to the agency relationship and upon the fact that all profits resulting from that relationship belong to the principal." (*Savage* v. *Mayer,* 33 Cal.2d 548, at p. 551 [203 P.2d 9]; also see *Walsh* v. *Hooker & Fay,* 212 Cal.App.2d 450 [28 Cal.Rptr. 16]; *Simone* v. *McKee,* 142 Cal.App.2d 307 [298 P.2d 667]; *Crogan* v. *Metz,* 47 Cal.2d 398 [303 P.2d 1029].)

 The usual theory upon which a principal recovers secret profits garnered by his agent is by imposition of a constructive trust. However, where the constructive trustee has dissipated the fund or property that would constitute the res of the constructive trust that theory will not do equity and it is proper in such a situation to award, instead, a judgment for money damages. (See *Alexandrou* v. *Alexander,* 37 Cal.App.3d 306 [112 Cal.Rptr. 307].)

In the case at bar church had a right, if it elected to assert it (89 C.J.S., Trusts, § 139), to a constructive trust on any funds in Hallaian's hands. Similarly, had Kurkjian received the commissions directly and retained them, a constructive trust could have been imposed on him. If he had received them and then transferred the funds to Hallaian a judgment for damages could have been awarded against Kurkjian. (*Alexandrou* v. *Alexander, supra.*) Of course, here Kurkjian was not in position to receive the commissions directly because he was not a real estate broker.

There is no difference between the situation where a person who would be subject to being declared a constructive trustee, has dissipated the res and the situation where a person who, without having the res in his possession, causes it to be diverted to a third person. In either case in order to properly make the beneficiary whole, a money judgment equal to the amount dissipated or diverted can be awarded in lieu of the imposition of a constructive trust.

 We conclude that where a fiduciary, in breach of his duty of disclosure, causes secret profits to flow to a third party, the fiduciary may be held liable for those profits even though he did not personally receive any part of them. (*Reid* v. *Robinson,* 64 Cal.App. 46 [220 P. 676]; *Burt* v. *Irvine Co.,* 237 Cal.App.2d 828 [47 Cal.Rptr. 392].)

Inasmuch as it was Kurkjian's breach of his fiduciary duty which made possible the payment of the commissions to Hallaian he may not be heard to complain that the court used the amount of the commissions as

the measure of the church's damages. As a fiduciary it was Kurkjian's obligation in each transaction to use his best efforts to secure the most beneficial deal possible for his principal, the church. Instead, he used his best efforts to assure that Hallaian would receive the commissions. We find nothing inequitable in now requiring him to deliver to his principal the amount which he caused to be improperly paid to Hallaian.

The judgments are affirmed.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied May 21, 1975, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1975.