In re Brian JACKS, Debtor.

Jaime B. Nahman, Plaintiff,

v.

Brian Jacks, Defendant.

Bankruptcy No. LA 98–36713–SB.
Adversary No. LA 98–02816–SB.

United States Bankruptcy Court,
C.D. California,
Los Angeles Division.

Dec. 29, 1999.

Sharon Coverly Hughes, Law Offices of Sharon C. Hughes, Los ·Angeles, CA, for defendant.

## OPINION ON SUMMARY JUDGMENT MOTIONS

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

These summary judgment motions raise two principal issues related to the liability of corporate officers and directors to a creditor of the corporation under § 523(a)(4)[1]. The first question is whether the claim of such a creditor can arise where the insolvency is created by the transactions constituting the defalcation at issue. The second question is whether, under California law, an individual creditor has standing to recover from a corporate director under § 523(a)(4) without bringing a derivative claim on behalf of all creditors of the corporation.

The court finds that timing of the transactions at issue is crucial. Where the defalcation itself creates the insolvency giving rise to the fiduciary duties to creditors, a corporate creditor has no claim for defalcation by a fiduciary under § 523(a)(4).

The court also holds that the California statutory codification of creditor rights against a director in such circumstances requires that the claim be brought as a derivative claim for the benefit of all corporate creditors. Therefore, the creditor lacks standing under California law to bring a non-derivative claim.

### II. FACTS

Plaintiff Jaime P. Nahman is a psychologist who worked as an independent contractor for Zeus Medical Corp. ("Zeus"), a California corporation. Nahman's duties included performing psychological and nonpsychological testing and preparing re-

John R. Winandy, Law Offices of John R. Winandy, Los Angeles, CA, for plaintiff.

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (West 1999) and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

ports, which Zeus submitted to lawyers or insurance companies in connection with pending workers' compensation disability claims. Nahmen was entitled to separate compensation for each report that he submitted.

Debtor Brian Jacks was president and chief financial officer of Zeus, and one of its two directors. Instead of receiving a fixed compensation from Zeus, Jacks withdrew funds from the corporate bank account for his personal use on an irregular and informal basis. These withdrawals were not documented as either compensation or loans.

In approximately 1991, Zeus began experiencing financial difficulty. Zeus did not pay Nahman for a period of three months in 1991, and Zeus' debt to Nahman grew to more than $80,000. The financial difficulties continued in 1992, and Jacks wrote Nahman a letter explaining that Nahman had not been paid because "the money was just not available in the corporation."

During Zeus' financial difficulties in 1991 and 1992, Jacks continued to use funds from Zeus for personal purposes. During that time, Jacks also refinanced several personal loans with Landmark Bank ("the bank"), which Zeus guaranteed and secured with all of its corporate assets (consisting primarily of anticipated insurance payments based on Nahman's reports). In October, 1992 Jacks filed a prior chapter 11 case and ceased paying his personal obligations to the bank.[2] The bank thereafter obtained a judgment against Zeus and J & J Psychiatric (a partnership of which Jacks was a general partner) for approximately $270,000. To pay the judgment, Zeus assigned its receivables to the bank. As of September 1996, the bank had received approximately $141,000 from Zeus' receivables.

After a seven-day trial in state court, Nahman received a joint and several judgment for $116,882.25 against Jacks and

Zeus on causes of action for breach of contract and common counts. The state court found that Jacks was the alter ego of Zeus on the grounds that he was the president and CEO of Zeus, he controlled the corporate assets and commingled them with his own personal funds, and he assigned the corporate assets in satisfaction of his personal loans. The state court granted judgment to Jacks and Zeus on a cause of action for promissory fraud.

Nahman asks this court to find that his state court judgment against Jacks is nondischargeable under § 523(a). The complaint pleads claims under subsections (2)(A) (fraud), (4) (defalcation while acting in a fiduciary capacity) and (6) (willful and malicious injury).

Both parties have made summary judgment motions. Jacks moves for summary judgment on all claims for relief. Nahman moves for summary judgment solely on the defalcation claim.

## III. LEGAL ANALYSIS

■ The dischargeability of the underlying state court judgment turns on the nature of the causes of action on which the judgment is based. *Lasagna v. Foster,* 609 F.2d 392, 395 (9th Cir.1979). Standing alone, the state court judgment based on contract and restitution (common counts) is dischargeable.

### A. Fraud Claim

Jacks moves for summary judgment on the fraud claim, on the grounds of collateral estoppel. This claim, he contends, is the one on which he prevailed in state court. Nahman defends on the grounds that his fraud claim here is for nondisclosure of facts that Jacks had a duty to disclose: that Jacks routinely transferred money from the corporation to his personal and business accounts whenever funds were available, and, that he caused the corporation to pledge its assets to secure Jacks personal obligations to the bank.

---

**2.** This prior chapter 11 case was subsequently dismissed.

■ Collateral estoppel or issue preclusion applies in the context of dischargeability litigation. In *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the Supreme Court stated:

> [A] bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action.

*Id.* at 658 (discussing the burden of proof on the dischargeability of fraud claims under § 523(a)(2)); *see also id.* at 285 n. 11, 111 S.Ct. 654. In contrast, *res judicata* or claim preclusion does not normally apply in dischargeability litigation in bankruptcy court. *Brown v. Felsen*, 442 U.S. 127, 133–138, 99 S.Ct. 2205, 2211–13, 60 L.Ed.2d 767 (1979). Issue preclusion applies only to issues that were actually litigated. Claim preclusion, in contrast, prohibits a party from bringing before a second court any issue arising out of the same facts that could have been litigated in the prior case, whether it was actually litigated or not. *Brown*, 442 U.S. at 130–31, 99 S.Ct. at 2209.

■ In this case, Jacks must prevail on the fraud claim under § 523(a)(2). The failure to disclose material facts where the defendant has a duty to provide such disclosure may support a fraud claim under § 523(a)(2). *See, e.g., Apte v. Japra (In re Apte)*, 96 F.3d 1319, 1323–24 (9th Cir. 1996); Samuel L. Bufford, *Dischargeability of Debt Litigation*, in 2 Bankruptcy Litigation § 13.8 (Howard J. Steinberg ed., 1989). While Nahman may have such claims against Jacks, these claims do not appear in the complaint (or otherwise) in this adversary proceeding. Rule 7009 incorporates by reference Rule 9(b) of the Federal Rules of Civil Procedure, which requires that fraud be pleaded with particularity. Jacks brought his summary judgment motion on the only fraud claim that appears in the complaint: he is entitled to summary judgment on that claim.

## B. Willful and Malicious Injury

■ Jacks must likewise prevail on the willful and malicious injury claim. Nahman contends that his willful and malicious injury claim is supported by *Lawrence T. Lasagna, Inc. v. Foster (In re Lasagna)*, 609 F.2d 392 (9th Cir.1979). In *Lasagna* the court found that a complaint sufficiently stated a claim for willful and malicious injury where it alleged that the state court had made findings that corporate officers and directors had wrongfully transferred corporate property to themselves, which caused the corporation to become further insolvent and unreasonably depleted its capital.

The court finds that *Lasagna* is not applicable in this case. It is a pleading case, which found only that the complaint had sufficiently stated a claim for relief. In contrast, the motion before this court is for summary judgment. Nahman must now prove his case on the merits.

■ The court finds that Nahman has not proven a prima facie case that Jacks caused him willful and malicious injury. In particular, Nahman has wholly failed to meet the heightened proof standards for willful and malicious injury enunciated by the United States Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). In that case, the Supreme Court held that a defendant is not liable for willful and malicious injury unless the defendant acted with actual intent to cause injury. *Id.*, 523 U.S. 57, 118 S.Ct. at 975–76. Nahman offers no evidence that Jacks acted with any intent to injure him. Thus, Jacks is entitled to summary judgment on the § 523(a)(6) claim.

## C. Defalcation by a Fiduciary

Both parties bring summary judgment motions on Nahman's claim that his debt is nondischargeable under § 523(a)(4) because it arose through Jacks' defalcation while acting in the fiduciary capacity of director and officer of Zeus. The material facts supporting this claim, according to

Nahman's brief in opposition to Jacks' summary judgment motion,[3] are the following: (1) Nahman had contracts with Jacks and Zeus; (2) Jacks was the president and CEO and a director of Zeus and controlled the money, passing it back and forth between the business entities, and finally using corporate assets to pay his personal loan; and (3) Zeus could not meet its obligations as they came due when the relevant transactions took place.

### 1. Fiduciary Duties to Creditors

So long as a corporation is solvent, the corporation's directors owe no fiduciary duties to creditors under California law. *Pittelman v. Pearce*, 6 Cal. App.4th 1436, 8 Cal.Rptr.2d 359, 364–66 (1992). When a corporation becomes insolvent, the fiduciary duties owing to shareholders extend to the corporation's creditors. *See, e.g., Pepper v. Litton*, 308 U.S. 295, 306–308, 60 S.Ct. 238, 84 L.Ed. 281 (1939) (a director of an insolvent corporation is a fiduciary whose obligation is designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders). The economic rationale for this rule is that the creditors replace the shareholders as the residual stakeholders when a corporation becomes insolvent.[4] *See, e.g., Steinberg v. Kendig (In re Ben Franklin Retail Stores, Inc.)*, 225 B.R. 646, 653 (Bankr. N.D.Ill.1998); Christopher W. Frost, *The Theory, Reality and Pragmatism of Corporate Governance in Bankruptcy Reorganizations*, 72 Am.Bankr.L.J. 103, 108 (1998).

When did Zeus become insolvent? Zeus apparently became insolvent when, as a result of the transfer of funds to Jacks, Zeus became "likely to be unable to meet its liabilities ... as they mature[d]." Cal. Corp.Code § 501 (West 1990). Nahman offers two pieces of evidence on the timing of the insolvency.[5] First, he points to Zeus' continuing failure, beginning in 1991, to pay him as payments came due. Second, he points to a July 3, 1992 letter where Jacks wrote that Nahman was not being paid "because the money was just not available in the corporation." Notably, Nahman presents no evidence whatever of the quantity of Zeus' other creditors, the amount owing to them, or whether they were paid during the relevant time frame.

Both of the items of evidence relate only to the failure to pay Nahman. However, the court does not believe that the failure to pay a single creditor, even repeatedly, makes a sufficient showing of insolvency in the requisite sense. The court has found no case law interpreting the California statutory requirement. Nonetheless, the court finds that this is not enough evidence to support an inference that Zeus was insolvent at the relevant times, in the absence of any evidence as to the existence of or payment to other creditors. In consequence, Nahman fails to show that Zeus was insolvent, so that Jacks owed him fiduciary duties as a Zeus creditor.

---

3. Nahman makes quite different allegations under § 523(a)(4) in his complaint. However, these are not asserted either in his own summary judgment motion or in his defense to the motion brought by Jacks. The court treats the allegations in the complaint as abandoned, to the extent that they differ from those in the summary judgment motions.

4. In balance sheet terms, the value of the assets is allocated first to the satisfaction of the fixed claims of creditors; what is left over (the residual) is defined as "shareholder equity." When the corporation becomes insolvent, there is not enough asset value to satisfy the fixed claims and the number representing shareholder equity becomes negative. That negative number then represents the extent to which the value of the creditors' claims is less than the amount of those claims. Since the liability of shareholders is limited to their investments, anything the managers do to increase or decrease shareholder equity is primarily to the benefit or detriment of the creditors, rather than the shareholders, until the corporation regains solvency.

5. Nahman also claims that Zeus "was still running a negative balance in its bank account" at the end of 1991. However, the evidence supporting this claim shows only an occasional imbalance that was quickly covered with a deposit.

## 2. Scope of Fiduciary Duties Owed to Creditors upon Insolvency

Even if Nahman had show that Zeus was insolvent, so that Jacks owed him fiduciary duties, Jacks could not prevail in this adversary proceeding.

To a substantial extent, the right to recover from directors or officers of California corporations for the violation of their fiduciary duties has been codified in California statute. Nahman, however, relies on common law fiduciary duties, rather than statutory duties. The California codification covers both the rights of shareholders and the rights of creditors. We must first explore the statutory fiduciary duties to determine what common law duties (if any) remain on which Nahman can base his claim.

### a. Statutory Fiduciary Duties

California Corporations Code §§ 500 and 501 prohibit a California corporation from making a distribution to its shareholders if the distribution renders the corporation insolvent. Section 501 pro-

hibits such a distribution if the distribution is likely to make the corporation unable to meet its liabilities as they mature.[6] Section 500 prohibits such a distribution unless (a) before the distribution, the corporation's retained earnings exceed the distribution, or (b) the assets after the distribution are at least 125% of the liabilities and the current assets are at least equal to the current liabilities.[7]

"Distribution" is a defined term in the California Corporations Code. Section 166 defines the term to mean "the transfer of cash or property by a corporation to its shareholders without consideration, whether by way of dividend *or otherwise ...*" (emphasis added). In this dispute Nahman relies on the cash flow or equity test in § 501.[8]

The court assumes that Nahman contends that Jacks violated his duties as a director and officer in authorizing an improper distribution to himself as one of the two shareholders of Zeus.[9] Whether the distribution was a dividend does not matter: the definition of "distribution" in § 166 is written very broadly to cover the transfer of funds (or other assets) to a

**6.** Section 501 provides:
Neither a corporation nor any of its subsidiaries shall make any distribution to the corporation's shareholders (Section 166) if the corporation or the subsidiary making the distribution is, or as a result thereof would be, likely to be unable to meet its liabilities (except those whose payment is otherwise adequately provided for) as they mature.
CALIFORNIA CORP.CODE § 501 (West 1990).

**7.** Section 500 provides:
(a) The distribution may be made if the amount of the retained earnings of the corporation immediately prior thereto equals or exceeds the amount of the proposed distribution.
(b) The distribution may be made if immediately after giving effect thereto:
(1) The sum of the assets of the corporation (exclusive of goodwill, capitalized research and development expenses and deferred charges) would be at least equal to 1¼ times its liabilities (not including deferred taxes, deferred income and other deferred credits); and

(2) The current assets of the corporation would be at least equal to its current liabilities....
CALIFORNIA CORP CODE § 500 (West Supp.1999).

**8.** Sections 166, 500 and 501 were added to the California Corporations Code, effective in 1976, in part because prior statutory provisions did not provide adequate protection to creditors, particularly trade creditors. *Legislative Committee Comment (1975)—Assembly [Corrected]*. Nahman is essentially a trade creditor, a category for whose protection these statutory provisions were enacted.

**9.** Nahman could claim that Jacks received cash from Zeus without consideration. To the extent that this charges looting of corporate assets by a non-shareholder without corporate authorization, the remedy under California law is a fraudulent transfer action. *See, e.g., T W M Homes, Inc. v. Atherwood Realty & Inv. Co.,* 214 Cal.App.2d 826, 29 Cal.Rptr. 887, 896–900 (1963). Nahman does not assert this claim.

shareholder in any kind of a transaction without consideration. Such a distribution is improper if made while Zeus was insolvent.

Sections 316(a)[10] and (c)[11] permit a nonconsenting pre-existing creditor to bring an action against a director for approving such a transaction.[12] The court assumes that this is the nature of Nahman's complaint against Jacks.[13]

### b. Non–Statutory Fiduciary Duties Owing to the Corporation

Nahman contends that his rights arise under common law, and not pursuant to the California Corporations Code.[14] However, the California Corporations Code was substantially revised, effective the beginning of 1977, and Nahman cites no case holding that relevant uncodified fiduciary duties remain.[15]

In this case, the court finds that Jacks had no relevant common law fiduciary duties as a director of Zeus that were owing to Nahman and other creditors, except those that are codified in California Corporations Code §§ 166, 500 and 501.[16] The court finds that the Corporations Code, as amended effective in 1976, covers

**10.** Section 316(a) provides:

> [D]irectors of a corporation who approve any of the following corporate actions shall be jointly and severally liable to the corporation for the benefit of all of the creditors or shareholders entitled to institute an action under subdivision (c):
> (1) The making of any distribution to its shareholders to the extent that it is contrary to the provisions of Sections 500 to 503, inclusive....

CALIFORNIA CORP.CODE § 316(a) (West Supp. 1999).

**11.** Section 316(c) provides:

> (c) Suit may be brought in the name of the corporation to enforce the liability ... under paragraph (1) of subdivision (a) against any or all directors liable by the persons entitled to sue under subdivision (b) of Section 506....

CALIFORNIA CORP.CODE § 316(c) (West Supp. 1999).

**12.** California Corporations Code § 315(a) prohibits a corporation from making or guaranteeing a loan to an officer or director, absent approval of the transaction by either a majority of disinterested shareholders or a unanimous vote of all of the shareholders. Section 316(a) imposes joint and several liability for the benefit of all creditors or shareholders on directors who approve such a transaction. Section 316(c) authorizes a nonconsenting creditor, whose claim arose before the transaction at issue, to bring suit in the name of the corporation against any or all directors who have approved such a transaction. Nahman's summary judgment motion for defalcation does not rely on a claim that Jacks received loans from Zeus in violation of §§ 315 and 316.

**13.** Section 506(b) authorizes any nonconsenting pre-existing creditor to bring an action to recover a distribution (as defined in § 166) that is prohibited by § 500 or § 501. However, a § 506(b) action may only be brought against an offending shareholder. Nahman does not purport to bring this action against Jacks in his capacity as a shareholder. The reason for not suing Jacks as a shareholder, the court assumes without deciding, is that as a shareholder Jacks owed no fiduciary duties to creditors such as Nahman.

**14.** Nahman also claims that he can recover under federal common law. However, there is no general federal common law of corporations. In the United States, corporations are created and exist under state statutes. See, e.g., Cort v. Ash, 422 U.S. 66, 84, 95 S.Ct. 2080, 2091, 45 L.Ed.2d 26 (1975). The obligations of officers and directors to shareholders, and the obligations of directors to creditors, derive from state law. See, e.g., Kamen v. Kemper Fin. Servs., 500 U.S. 90, 98–99, 111 S.Ct. 1711, 1717, 114 L.Ed.2d 152 (1991).

**15.** As to the prior statute, see Gray v. Sutherland, 124 Cal.App.2d 280, 268 P.2d 754 (1954) (holding that prior statute governing unlawful dividends is not only basis for finding tortious conduct of corporate officer).

**16.** In support of his contention that California law imposes an additional fiduciary duty on the directors of an insolvent corporation, Nahman cites inter alia Title Ins. & Trust Co. v. Cal. Dev. Co., 171 Cal. 173, 152 P. 542, 556 (1915), where the California Supreme Court described the fiduciary duty owing by directors of an insolvent corporation to creditors as follows:

> Directors of an insolvent corporation who have claims against the company as creditors cannot secure to themselves any prefer-

the field of these duties. The court also finds that Jacks would breach these duties, if Zeus were insolvent at the relevant time. Thus Nahman's claim is statutory, and must meet the requisites of the California statute.

### 3. "Fiduciary" under § 523(a)(4)

■ For the purposes of § 523(a)(4), it is not sufficient to show that a defendant was a fiduciary under applicable state law. Whether a relationship is "fiduciary" within the meaning of § 523(a)(4) is a question of federal law. *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934); *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir.1996); *Evans v. Pollard (In re Evans)*, 161 B.R. 474, 477 (9th Cir. BAP 1993); *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986). The broad, general definition of "fiduciary" is inapplicable in the dischargeability context. *Evans*, 161 B.R. at 477; *Lewis*, 97 F.3d at 1185. In *Davis*[17] the United States Supreme Court stated:

> [T]he statute speaks of technical trusts, and not those which the law implies from … contract. The scope of the exception [is] to be limited accordingly. … It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto. … The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created.

*Davis*, 293 U.S. at 333, 55 S.Ct. 151 (citations omitted); *see also Lovell v. Stanifer (In re Stanifer)*, 236 B.R. 709, 713; *Ragsdale*, 780 F.2d at 796. Implied or constructive trusts, and trusts *ex maleficio* (trusts created merely on the basis of wrongful conduct) do not create a fiduciary relationship within the purview of § 523(a)(4). *See Davis, id.; Stanifer*, 236 B.R. at 714; *In re Short*, 818 F.2d 693, 695 (9th Cir.1987). Instead, the fiduciary relationship must be one arising from an express[18] or technical trust that existed before and without reference to the wrongdoing that caused the debt. *See Davis, id.; Lewis*, 97 F.3d at 1185.

Whether a fiduciary is a "trustee" in that strict and narrow sense is determined in part by reference to state law. *See Lewis*, 97 F.3d at 1185; *Abrams v. Sea Palms Assocs. (In re Abrams)*, 229 Bankr. 784, 789 (9th Cir. BAP 1999).

■ For the purposes of finding a debt nondischargeable under the fiduciary defalcation language of § 523(a)(4), case law

---

ence or advantage over other creditors, by using their powers as directors for that purpose.

*Id.* (internal quotations and cites omitted) (affirming lower court decision setting aside Mexican court confession of judgment for corporation that dominated debtor, and thus held duties of a director with respect to the debtor, and requiring equitable distribution to all creditors). Nahman also relies on *Commons v. Schine*, 35 Cal.App.3d 141, 110 Cal. Rptr. 606 (1973); *Saracco Tank & Welding Co. v. Platz*, 65 Cal.App.2d 306, 150 P.2d 918 (1944); *Brainard v. De La Montanya*, 18 Cal.2d 502, 116 P.2d 66 (1941); *Winchester v. Howard*, 136 Cal. 432, 69 P. 77 (1902). Nahman gives no evidence that these cases survive the subsequent codification of directors' duties and creditors' remedies under California corporation law.

17. *Davis* was decided under Bankruptcy Act § 17(a)(4), the predecessor to § 523(a)(4). As the language of the provision governing defalcation while acting in a fiduciary capacity is almost identical under the Bankruptcy Act and the Bankruptcy Code, the case law construing Bankruptcy Act § 17(a)(4) should be followed in interpreting § 523(a)(4). *In re Paeplow*, 217 B.R. 705, 709 n. 4 (Bankr.D.Vt. 1998).

18. Generally, an express trust is created by an agreement between two parties to impose a trust relationship. The general characteristics of an express trust are: (1) sufficient words to create a trust; (2) a definite subject; and (3) a certain and ascertained object or *res*. *Schlecht v. Thornton (In re Thornton)*, 544 F.2d 1005, 1007 (9th Cir.1976); *Reagh v. Kelley*, 10 Cal.App.3d 1082, 89 Cal.Rptr. 425 (1970).

interpreting *Davis* has required an "express or technical trust" beyond common law fiduciary duties. Such a preexisting trust obligation may be satisfied by statute or common law. *See Lewis*, 97 F.3d at 1185 (finding that a partner is a fiduciary for the purposes of § 523(a)(4) under Arizona common law); *In re Bennett*, 989 F.2d 779, 785–90 (5th Cir.1993) (same for managing partner of managing partner of limited partnership under Texas law); *Ragsdale v. Haller*, 780 F.2d 794, 796–97 (same for partnership under California law); *Abrams*, 229 B.R. at 790–92 (same).[19]

· Recent case law has found that the fiduciary relationship between a corporation's officers and its creditors that arises when the corporation becomes insolvent is a sufficient trust relationship for the application of § 523(a)(4). *See Berres v. Bruning (In re Bruning)*, 143 B.R. 253, 254 (D.Colo. 1992); *Committee v. Haverty (In re Xonics)*, 99 B.R. 870, 872 (Bankr.N.D.Ill.1989) (finding that corporate chairman and chief executive officer did not breach fiduciary duties to creditors); *Bay 511 Corp. v. Thorsen (In re Thorsen & Co.)*, 98 B.R. 527, 528 (Bankr.D.Colo.1989).[20]

▇▇▇▇ However, the timing of the alleged insolvency is an issue of great importance for the determination of whether a director is a fiduciary for § 523(a)(4) purposes. *Davis* requires that the trust relationship arise before the defalcation. *See Evans v. Pollard (In re Evans)*, 161 B.R. 474, 477 (9th Cir. BAP 1993); *Lewis v. Short (In re Short)*, 818 F.2d 693, 695 (9th Cir.1987); *Thorsen*, 98 B.R. at 529–30. The evidence

in this case is that the transactions at issue rendered Zeus insolvent. Nahman has not shown that Zeus was insolvent before these transactions. In consequence, Jacks must prevail on this issue.

### 4. Defalcation

▇▇▇▇ "Defalcation" is the misappropriation of trust funds or money held in any fiduciary capacity, or the failure to properly account for such funds. *Lewis*, 97 F.3d at 1186 (9th Cir.1996); *Stanifer*, 236 B.R. at 711. Nahman has sufficiently shown that this element is satisfied in this case. The evidence shows that Jacks used corporate assets to guarantee personal debt, and that the bank foreclosed on these assets when Jacks did not make the payments on the personal debt to the bank. This misappropriation would constitute defalcation, if the other elements were met. *See Moreno v. Ashworth (In re Moreno)*, 892 F.2d 417, 421 (5th Cir.1990).

### 5. Necessity for Derivative Action

▇▇▇▇ The most important shortcoming of Nahman's claim in this case is that California statute requires that an action against Jacks under § 316 be a derivative action. It appears that Nahman is a nonconsenting creditor who would have the right to bring a suit under §§ 315 and 316. Section 316 makes it explicit that such a suit must be brought "in the name of the corporation"[21] and "for the benefit of all of the creditors."[22] *Accord, Campbell v. Clark*, 159 Cal.App.2d 432, 324 P.2d 51, 53 (1958) (applying prior law). Such conduct

---

**19.** Nahman relies on the *alter ego* finding of the state court in claiming that he has made a *prima facie* case of breach of fiduciary duty owing to him by Jacks. In support of this position he cites *Lasagna v. Foster*, 609 F.2d 392 (9th Cir.1979), a case applying language similar to § 523(a)(4) in § 35(a)(4) of the Bankruptcy Act of 1898. However, *Lasagna* does not help him make this *prima facie* case. In *Lasagna* the state court had found that the individual debtors were fiduciaries to the creditors. Here the state court made no such finding, and this issue remains open.

**20.** A trust relationship arising as a result of a defalcation create makes the defalcator a trustee *ex maleficio*, and does not come within the scope of § 523(a)(4). For this reason, constructive, resulting and implied trusts are excluded. *Evans v. Pollard (In re Evans)*, 161 B.R. 474, 477 (9th Cir. BAP 1993); *Lewis v. Short (In re Short)*, 818 F.2d 693, 694 (9th Cir.1987).

**21.** *See* §§ 316(c) and 506(b).

**22.** *See* §§ 316(a) and 506(a).

by directors or officers inflicts injury on the corporation, and not directly on the stockholders or creditors. *Id.* Where the plaintiff neither claims nor seeks to represent the corporation, the plaintiff lacks standing to assert such a claim. *Id.*, at 437–38, at 54.

Thus, Nahman's claim in this case must be brought in Zeus' name. Furthermore, the claim must be brought for the benefit of (and shared with) all of Zeus' creditors, and not solely for the benefit of an individual creditor.[23]

Nahman has not brought this adversary proceeding as a derivative action in Zeus' name and he has not brought it for the benefit of all Zeus creditors. He wants his own individual recovery from Jacks, that he does not propose to share with anyone else.

■ Under California law, which provides the applicable fiduciary duties for the purposes of § 523(a)(4) in this case, there are no fiduciary duties owing individually to Nahman. *See Campbell v. Clark,* 159 Cal.App.2d 432, 324 P.2d 51, 53 (1958) (applying prior law). Where the plaintiff neither claims nor seeks to represent the corporation, under California law the plaintiff lacks standing to assert such a claim. *Id.* at 437–38, at 54.

## IV. CONCLUSION

The court finds that judgment must be awarded against Nahman and in favor of Jacks on his claims for fraud under § 523(a)(2), and for willful and malicious injury under § 523(a)(6).

On his breach of fiduciary duty claim under § 523(a)(4), the court finds that Nahman has satisfied most, but not all, of the applicable requirements. Nahman has shown that he has a statutory right, but not a common law right, to recover from Jacks for Jacks' action as a director of Zeus in authorizing a distribution of corporate assets to himself as a shareholder, provided that the transaction resulted in making Zeus insolvent in the sense that it could no longer meet its liabilities as they matured. However, Nahman has failed to show that Zeus was insolvent in this sense at the relevant times.

Nahman has shown that, if such a fiduciary duty existed at the relevant time, Jacks' conduct constituted defalcation. However, § 523(a)(4) applies only where the relevant fiduciary duty existed before the defalcation at issue, and not where the wrongful conduct itself gives rise to the fiduciary duty. Because Nahman's theory is that the wrongful conduct itself made Zeus insolvent and gave rise to the fiduciary duties to creditors, it does not qualify under § 523(a)(4).

Furthermore, California statute (as well as prior common law) requires that a creditor's claim for breach of such a fiduciary duty be brought as a derivative action for the benefit of all of the corporation's creditors. Where the action is not derivative, the creditor lacks standing to make a claim. Because Nahman has not brought a derivative claim in this case for the benefit of all of Zeus' creditors, he lacks standing to bring it.

For the foregoing reasons, summary judgment is awarded to Jacks.

.

---

23. Alternatively, if the corporation is in bankruptcy, such an action may be brought by the bankruptcy trustee for the benefit of all of the corporation's creditors. *See Commons v. Schine,* 35 Cal.App.3d 141, 110 Cal.Rptr. 606 (1973); *Gray v. Sutherland,* 124 Cal.App.2d 280, 268 P.2d 754 (1954); *Sears v. Steizner (In re Globe Drug Co.),* 104 F.2d 114 (9th Cir. 1939) (predecessor statute); *Standard Oil Co. v. Cadwalader (In re Marblehead Land Co.),* 96 F.2d 72 (9th Cir.1938) (same).