**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 10 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAURICE KANBAR, an individual; et
al.,

            Plaintiffs - Appellants,

    v.

HENRY KAUFMAN, an individual,

            Defendant - Appellee.

No. 09-15556

D.C. No. 3:07-cv-02123-VRW

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
Vaughn R. Walker, Chief District Judge, Presiding

Argued and Submitted February 11, 2010
San Francisco, California

Before: NOONAN, BERZON and IKUTA, Circuit Judges.

    Maurice Kanbar is an inventor, entrepreneur, and philanthropist. Henry

Kaufman is a retired bond trader and investment banker. Kaufman and Kanbar met

around 1962, when Kaufman underwrote a public offering for Kanbar's company,

---

    *    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

the Spandex Corporation. They became friends at that time and spoke occasionally. In 2001, Kanbar sought Kaufman's advice in a financial problem regarding Kanbar's charitable foundation. Kaufman came to San Francisco and moved into an apartment building owned by Kanbar. He helped Kanbar to realize about $10 million in tax savings by converting his charitable foundation to a charitable trust.

While Kaufman was in San Francisco, it became clear that Kanbar would receive $320 million from the sale of Skyy Vodka. Kanbar asked Kaufman if he would stay and help Kanbar to manage this money with the intent of distributing it to charity. Kaufman agreed to stay. Kaufman was eventually responsible for investing all of the money that Kanbar received from the sale of Skyy, and he had signing authority over Kanbar's bank accounts. Kaufman was not compensated formally for his services. Kaufman had little specific direction from Kanbar; however, he was aware of one specific Kanbar policy: Kanbar did not believe in paying bonuses.

Kaufman's investments for Kanbar included about $108 million for twenty-one commercial buildings in downtown Tulsa, Oklahoma, which he began purchasing around June 2005, and finished purchasing by December 31 of that year.

In making the Tulsa investments, Kaufman enlisted the help of Raymond Feldman, a local lawyer, to help with the real estate closings. Feldman charged a fee of approximately $500,000, or roughly $25,000 per building. Feldman and his wife were also very active in Tulsa social circles, and helped to find tenants for the buildings that Kaufman was buying on Kanbar's behalf. In the midst of the purchasing spree, Kaufman paid Feldman an unrequested consulting fee of $200,000 for extraordinary services. The district court found that he did not sufficiently apprise Kanbar of the payment of the bonus.

In the process of due diligence for the Tulsa investments, Kaufman also consulted with John Snyder, a Tulsa construction manager. Snyder and his wife Tori owned six buildings near those that Kaufman was purchasing for Kanbar. Like Feldman, the Snyders were well connected in Tulsa. They helped to secure discounts on the prices of buildings on Kaufman's behalf. At the same time as the bonus to Feldman, Kaufman paid an unrequested $400,000 consulting fee to Tori Snyder. In addition to the cash payment, Kaufman provided the Snyders with a $250,000 interest free five month loan with Kanbar's funds. Again, Kaufman did not sufficiently apprise Kanbar of the payment of the bonus or the loan. The loan was repaid sometime before trial.

Over the course of 2006, the Kanbar-Kaufman relationship disintegrated. By May or June of 2006, Kaufman had returned to New York and had no further involvement with Kanbar's finances.

On March 16, 2007, Kanbar filed suit against Kaufman in San Francisco Superior Court alleging negligence, fraud, and breach of fiduciary duty. Kaufman removed the case to federal court on diversity grounds. The district court dismissed the fraud claim on Kaufman's motion. Kanbar filed an amended complaint alleging only breach of fiduciary duty and negligence and seeking damages of not less than $20 million.

The district court, Chief Judge Vaughn Walker presiding, held a bench trial in which, with the agreement of the parties, Kaufman and Kanbar were the only two witnesses. The court held for Kaufman on most of Kanbar's claims. Kanbar prevailed, however, on certain of his claims that Kaufman owed him a duty of candor, and that Kaufman breached that duty when he paid consulting fees to Feldman and the Snyders and when he made the interest free loan to the Snyders without properly informing Kanbar.

Having found that Kaufman breached his duty, the district court proceeded as though Kanbar bore the burden of showing that he was damaged by the payments, and held that he had failed to establish that he was damaged by the

4

payment of the consulting fees to Feldman and to the Snyders. The court found that the fees were paid in November of 2005, that they secured the services of Feldman and the Snyders for future purchases through the end of 2005, that those services were likely worth a substantial amount, and that Kanbar was therefore not damaged by the payment of the bonuses. As to the loan, the court ruled that Kanbar had shown that he was damaged by the loss of the use of the $250,000 for the duration of the loan. Judge Walker awarded Kanbar $11,222.60 in lost interest on the loan money.

Kanbar appeals and challenges only the district court's rulings with respect to damages from the two bonus payments. He claims that the district court erred as a matter of California law in assigning to him the burden of showing damages for Kaufman's breaches of the duty of candor, or alternatively that the district court erred in its factual finding that Kanbar received adequate consideration for the consulting fees paid to the Snyders and to Feldman.

Kanbar cites *St. James Armenian Church of Los Angeles v. Kurkjian*, 47 Cal. App. 3d 547, 551 (Cal. Ct. App. 1975) for the proposition that there is a presumption of damages where a fiduciary fails to disclose to his principal a payment made to a third party. But Kanbar never cited *St. James* or made any argument about a presumption of damages before the district court. The time to

5

raise this legal point was before the district court, which could have ruled on it and changed the proceedings in the trial accordingly. *See Castaneda v. United States*, 546 F.3d 682, 700 (9th Cir. 2008) ("[I]n order for an argument to be considered on appeal, the argument must have been raised sufficiently for the trial court to rule on it.") (internal quotation marks omitted). We decline to consider Kanbar's belated argument.

As for Kanbar's contention that the district court erred in its factual findings, we will not disturb a district court's findings of fact in a bench trial unless they are clearly erroneous. *Bertelsen v. Harris*, 537 F.3d 1047, 1056 (9th Cir. 2008). The district court's findings here had sufficient support in the record at trial.

The judgment of the district court is AFFIRMED.